UNITED STATES of America

v.

Robert KOZELL.

Crim. No. 78–365–4.

United States District Court,
E. D. Pennsylvania.

April 5, 1979.

---

Peter F. Vaira, U. S. Atty., Thomas J. McBride, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Alan A. Turner, Federal Defender Association, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court is the motion of the defendant Robert Kozell ("Kozell"), pursuant to Fed.R.Crim.P. 14, for relief from prejudicial joinder. For the reasons stated below, the motion will be denied.

Kozell is one of five defendants charged in a one-count indictment with conspiracy to distribute and to possess with intent to

distribute phencyladine phospate ("PCP"), a Schedule II, non-narcotic controlled substance, in violation of 21 U.S.C. § 841. On the basis of the indictment, read in light of discovery taken, Kozell states in his motion that he expects the Government to offer evidence tending to prove that he and a codefendant, Kerby Keller ("Keller"), visited the home of a Government informant on October 20, 1977, and delivered approximately two pounds of PCP. Kozell expects the Government to offer the testimony of the informant, as well as a tape recording of the conversation made during the visit on a body·recorder worn by the informant. The tape contains several ambiguous or equivocal statements by Kozell which may or may not be construed as evidencing knowledge of or participation in the conspiracy on the part of Kozell.

Kozell urges the Court to grant his motion for a severance on the ground that a joint trial will deprive him of the opportunity to call Keller as a defense witness but that, if a severance were granted, Keller would testify that Kozell did not participate in the conspiracy and would explain Kozell's "ambiguous" statements.

 As a general rule, defendants jointly indicted should be jointly tried. *United States v. Frumento*, 409 F.Supp. 143, 144 (E.D.Pa.1976). Severance may be denied in the absence of a clear showing that a defendant will be so severely prejudiced by a joint trial that it will in effect deny him a fair trial. *United States v. Barber*, 296 F.Supp. 795, 797 (D.Del.1969), *aff'd in part, rev'd in part on other grounds*, 442 F.2d 517 (3d Cir.), *cert. denied*, 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971). Kozell's argument in support of his motion for severance is that Keller will invoke his Fifth Amendment privilege if they are tried jointly, thus depriving him of Keller as a defense witness. It is true that a defendant may not be required to take the stand at his own trial. *United States v. Housing Foundation of America*, 176 F.2d 665, 666 (3d Cir. 1949). However, a codefendant may be called as a witness at a separate trial for another person accused with him.

*United States v. Arcuri*, 405 F.2d 691, 695 (2d Cir. 1968), *cert. denied*, 395 U.S. 913, 89 S.Ct. 1760, 23 L.Ed.2d 227 (1969). The fundamental flaw in Kozell's argument is that he cannot compel Keller to testify even if a severance is granted. *United States v. Barber, supra*, 442 F.2d at 529 n. 22.

In *United States v. Boscia*, 573 F.2d 827 (3d Cir. 1978), the Third Circuit articulated several factors to be considered in determining whether the Court should grant a severance on the ground that a joint· trial would deprive the movant of the ability to call a codefendant as a defense witness:

> In determining the necessity of severance under these circumstances, courts have placed emphasis on the following four factors: (1) the likelihood of co-defendant's testifying; (2) the degree to which such testimony would be exculpatory; (3) the degree to which the testifying co-defendants could be impeached; (4) judicial economy.

*Id.*, at 832. *See also United States v. Rosa*, 560 F.2d 149, 155 (3d Cir. 1977) (en banc); *United States v. Finklestein*, 526 F.2d 517, 523–524 (2d Cir. 1975); *Byrd v. Wainwright*, 428 F.2d 1017, 1019–1020 (5th Cir. 1970). Upon consideration of each of these factors, we find that their resolution militates against Kozell's position.

 Kozell attempts to show that Keller is likely to testify through assertions of Keller's counsel, Carmen Nasuti, Esquire, made during a hearing held on this motion. Mr. Nasuti stated, in unsworn testimony, that *if* Keller's trial were held before Kozell's trial and *if* Keller were convicted, Keller would probably be willing to testify on behalf of Kozell. Mr. Nasuti could not make any representations regarding Keller's willingness to testify on behalf of Kozell in the event that his trial resulted in an acquittal. While it is not necessary that Kozell show that Keller is "certain" to testify at a later trial, *United States v. Echeles*, 352 F.2d 892 (7th Cir. 1965), we find that Kozell has not shown that Keller is "likely" to testify due to the various conditions he has placed on his willingness to testify.

First, Keller will "probably" testify if he is convicted at a trial and if the trial is held previous to Kozell's trial. The Court cannot speculate as to the probability that Keller will be convicted but can only find that this condition precedent greatly reduces the likelihood that he will testify. The Court is also uncertain as to the propriety and desirability of having parties stipulating the order of trials, a matter that is within the Court's sound discretion. *Byrd v. Wainwright, supra,* 428 F.2d at 1022; *United States v. Sanders,* 266 F.Supp. 615, 623 (W.D.La.1967).

Second, the Court is uncertain as to Keller's willingness to testify if he is convicted at a prior trial but decides to appeal that conviction. While an appeal is pending, Keller would certainly have an interest in retaining his Fifth Amendment privilege because of the possibility that a new trial may be granted. As a consequence, this Court may be asked to stay Kozell's trial pending the exhaustion of Keller's appeals and the completion of any further proceedings at the District Court level. On the other hand, we would not ask Keller to irrevocably waive his right to appeal at this preliminary stage of the proceedings against him. A similar problem would arise in the event that Keller is mistried because a jury is unable to reach a verdict. Keller would, once again, have an interest in retaining his Fifth Amendment privilege.

Ordinarily, the Court would expect to proceed with Kozell's trial immediately following Keller's trial. If Keller were convicted, his willingness to testify on behalf of Kozell could certainly be affected by the pendency of the presentence investigation. While Kozell might be willing to waive his right to a speedy trial pending Keller's sentencing, the interests of the Court and the public in the expeditious and efficient administration of justice would militate against permitting such a delay. In light of the various conditions placed upon Keller's willingness to testify, we find that, overall, Kozell has not shown that Keller is "likely" to testify.

Kozell argues that, in the event Keller is acquitted, his unwillingness to commit himself to testify would be irrelevant because Kozell could then reach Keller with a subpoena. This argument is premised on the notion that the double jeopardy clause would eliminate any criminal liability arising out of the testimony and that, therefore, Keller could not invoke his Fifth Amendment privilege against self-incrimination. The Court is not in a position to decide this very difficult constitutional issue at this time and, in any event, Keller would not be subject to the full coercive power of this Court, if we were to decide that he must testify, since he is already incarcerated upon a felony conviction.

■ In the alternative, Kozell urges this Court to grant Keller some sort of "informal" immunity. It is clear that the grant or denial of immunity is wholly within the discretion of the executive branch, *United States v. Rocco,* 587 F.2d 144 (3d Cir. 1978), and that the Court has no authority to provide immunity for a defense witness. *Id. See also United States v. Morrison,* 535 F.2d 223, 228–229 (3d Cir. 1976).

■ As to the second prong of the *Boscia* analysis, we find that Kozell has not demonstrated the exculpatory nature of Keller's expected testimony. Kozell must provide facts as to the nature, extent and importance of the exculpatory testimony which he expects Keller to give. *United States v. Frumento, supra,* 409 F.Supp. at 175. The only information provided to the Court is based upon the unsworn representations of counsel for both Kozell and Keller to the effect that Keller would, in essence, admit his own role in the delivery but would state that Kozell was not a participant in the conspiracy, that he had no knowledge of it and that he did not receive any part of the proceeds of the sale. While it is not necessary that Kozell demonstrate the nature of Keller's testimony through sworn testimony, *Byrd v. Wainwright, supra,* 428 F.2d at 1020; *United States v. Gleason,* 259 F.Supp. 282, 283 (S.D.N.Y. 1966), and while the Court has no reason to doubt the integrity and professionalism of

respective counsel, we are not convinced that Keller's testimony would go far to exculpate Kozell.[1]

Mr. Nasuti, as counsel for Keller, indicated that he would be willing to permit Kozell to call Keller as a witness for the purpose of this motion. However, the Court alerted Mr. Nasuti that Keller would run the risk of waiving his Fifth Amendment rights if he did take the stand. Counsel for Kozell argued that Keller would not be waiving his Fifth Amendment rights because of the preliminary nature of the hearing. The Court noted that it had not made a final determination on the issue but merely was alerting Mr. Nasuti of the consequences of permitting Keller to testify. With this possible pitfall in mind, Mr. Nasuti instructed Keller not to testify.

Upon consideration of the representations of counsel, we find that the showing as to the exculpatory nature of the testimony is weak. Kozell would be the proper person to testify as to his own awareness of the conspiracy. Kozell may also cross-examine the Government informant as to the events occurring at the informant's home. It is also pertinent at this point to consider the third factor articulated by the court in *Boscia*—the codefendant's impeachability. Keller would be subject to impeachment on two important grounds. First, since he would be willing to testify only if convicted and since he is already incarcerated on a felony drug charge, it would appear from this vantage point that two felony convictions would be admitted pursuant to F.R.E. 609. Second, in order to exculpate Kozell, Keller would have to inculpate himself and would be impeached on the theory that he would have nothing to lose by testifying on behalf of Kozell.

Finally, we find that considerations of judicial economy militate against separate trials. While a defendant should never be deprived of a fair trial because it is more economical to try several defendants jointly, where there is reasonable assurance that Kozell will be given a fair trial, judicial economy becomes a relevant factor. *United States v. Boscia, supra*, 573 F.2d at 833. Since we find that a joint trial will not be unfair to Kozell and because separate trials in complex conspiracy cases are costly in terms of judicial and prosecutorial resources, the motion for severance will be denied. An appropriate Order will be entered.

---

1. This case is unlike others in which the codefendant whose testimony is sought has already made exculpatory statements which can give the Court some notion of what he will testify to at a later trial. *See, e. g., United States v. Echeles*, 352 F.2d 892 (7th Cir. 1965).