**UNITED STATES of America**

v.

**Joseph DITIZIO.**

**Crim. No. 81–330–02.**

United States District Court,
E. D. Pennsylvania.

Jan. 18, 1982.

Stephen V. Wehner, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Burton A. Rose, Philadelphia, Pa., for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Defendant Joseph Ditizio has moved for severance from his co-defendant Vincent Fardella. They are both charged with, *inter alia*, conspiracy to commit arson. In his motion, Ditizio contends (a) that Fardella has made statements in an off-the-record interview with Government agents which if introduced at trial would tend to exculpate him and (b) that since these statements could not be introduced at a joint trial, severance is necessary to allow Ditizio to present a fair and complete defense.

While the general rule is that defendants who are indicted together should be jointly tried, *see United States v. Kozell*, 468 F.Supp. 746, 748 (E.D.Pa.1977), a trial judge has discretion under Federal Rule of Criminal Procedure 14 to grant a severance in order to avoid prejudice that would effectively deny a defendant a fair trial. In *United States v. Boscia*, 573 F.2d 827 (1976), the Third Circuit has set forth certain considerations a trial court must weigh in ruling on a motion to sever that is based on the movant's desire to call a co-defendant as a witness on his behalf: (1) the likelihood that the co-defendant will testify at a separate trial; (2) the degree to which such testimony would be exculpatory; (3) the degree to which the testifying co-defendant could be impeached; and (4) judicial econo-

my. *Id.* at 832. *See United States v. Kozell, supra,* 468 F.Supp. at 748; *United States v. Stout,* 499 F.Supp. 605, 606–07 (E.D.Pa.1980). *See also United States v. Rosa,* 560 F.2d 149, 155 (3d Cir. 1977); *United States v. Marable,* 574 F.2d 224, 231 (5th Cir. 1978) (listing similar criteria).

Most of the dispute between the Government and Ditizio has centered on the first consideration—whether Fardella is likely to testify at a second trial if severance is granted. Obviously, had Ditizio submitted an affidavit by his co-defendant indicating that Fardella intended to waive his privilege against self-incrimination, appear as a witness on Ditizio's behalf, and repeat at a second trial the substance of the exculpatory statement he made to Government agents, the first *Boscia* consideration would be satisfied. Lacking such assurances, Ditizio has advanced two alternative contentions: *first,* that a severance would allow him to call the Government agent who interviewed Fardella to testify about Fardella's statements under the hearsay exception for statements against penal interest, Federal Rule of Evidence 804(b)(3), or the "catchall" provision, Federal Rule of Evidence 804(b)(5); or *second,* assuming this proposed testimony is not admissible, that severance would still be appropriate to allow Ditizio to move that Fardella be granted judicial use immunity under *Government of Virgin Islands v. Smith,* 615 F.2d 964, 971–72 (3d Cir. 1980), so that Fardella may be compelled to testify.

The gist of Fardella's allegedly exculpatory statement was that he and Charles Allen, an unindicted co-conspirator, were the only members of the conspiracy. *See* January 4, 1982 letter from Assistant United States Attorney Stephen Wehner to Burton Rose, Fardella's counsel, (summarizing the substance of Fardella's statement). The statement was made during an off-the-record interview pursuant to a letter of agreement signed by United States Attorney Peter Vaira, Wehner, Fardella, and Fardella's then counsel, Justin Simon. *See* August 10, 1981 letter from Vaira to Simon.

Ditizio argues that the Fardella statement is admissible as a statement against penal interest pursuant to Federal Rule of Evidence 804(b)(3). The Government contends that Rule 804(b)(3) is not satisfied because Fardella was promised in the August 10 letter that "no statements made by . . . [Fardella] during the 'off-the-record' proffer or discussion will be used against [him] in any criminal case," and therefore the statement did not, within the intendment of Rule 804(b)(3) expose the declarant to criminal liability.

▮ To be admissible under Federal Rule of Evidence 804(b)(3), a statement (a) must have been made by a declarant unavailable at trial, (b) must have "so far tended to subject [the declarant] to . . . criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true," and (c) must have been uttered under "corroborating circumstances" which "clearly indicate [its] trustworthiness." At the outset, the parties agree that, for purposes of deciding Ditizio's motion to sever, it is proper to assume that Fardella would claim the fifth amendment privilege against self incrimination at a second trial and thereby satisfy the first 804(b)(3) consideration that he be unavailable. *See* Fed.R.Evid. 804(a)(1) (defining witnesses claiming a privilege as unavailable).

▮ Although the risk that Fardella would be subjected to criminal liability on the basis of his statement was significantly reduced by the grant of use immunity referred to in the August 10 letter of agreement, a sufficient risk of prosecution remained so that a reasonable declarant would not have made the statement without believing it to be true. The August 10 letter advised Fardella that "the Government may make derivative use of and may pursue any investigative leads suggested by any statements made by or other information by [him]." Accordingly, had Fardella's statement prompted Government investigators to seek some corroboration of his remarks and had such an investigation produced incriminating evidence, that evidence

could be used against him at trial under the terms of the August 10 letter. Thus, since Fardella's statement was made in circumstances which kept alive some threat of criminal liability, I find that the statement was sufficiently against Fardella's interest to satisfy the second condition of Rule 804(b)(3). I am reinforced in this conclusion by decisions noting that Congress's use of the broadly worded phrase "tended to subject" in Rule 804(b)(3) suggests that trial judges should apply a liberal standard in determining whether a statement tended to subject a declarant to criminal liability. *See United States v. Satterfield*, 572 F.2d 687, 691 (9th Cir. 1978); *United States v. Thomas*, 571 F.2d 285, 288 (5th Cir. 1978).

■ With respect to the final Rule 804(b)(3) consideration—trustworthiness— the declarant's position and the circumstances under which the statement was made must be carefully scrutinized. *See United States v. Atkins*, 558 F.2d 133, 135– 36 (3d Cir. 1977), *cert. denied*, 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 289 (1978). The letter agreement with Fardella setting forth the ground rules for the proffer discussion established several conditions (in addition to the "derivative use" possibility, discussed above) plainly designed to guarantee the veracity of Fardella's utterances:

> [I]n the event [Fardella] is a witness at the trial of the above captioned matter and offers testimony materially different from any statements made or other information provided during the "off-the-record" proffer or discussion, the attorney for the government may cross-examine [him] concerning any statements made or other information provided during the "off-the-record" proffer or discussion. This provision is necessary in order to assure that [he] does not abuse the opportunity for an "off-the-record" proffer or discussion, does not make materially false statements to a government agency, and does not commit perjury when testifying at trial. Fourth, [Fardella] agrees to sub-

mit himself to a government conducted polygraph. This provision is necessary so that we may effectively evaluate the truthfulness of [his] proffer.

In spite of these efforts to ensure the truthfulness of statements made during the discussion, the Government now argues that Fardella's remarks must be regarded as unreliable since they were made during a proffer discussion—a setting in which, according to the Government, the interest all potential defendants have in currying favor with the Government cuts against trustworthiness. But, whatever may be the case in the generality of such discussions, I am persuaded that in this instance the highly commendable care taken by the Government, in the August 10 letter, to define the ground rules for the interview, undermines the Government's *ex post* contention that Fardella was free to fabricate or omit facts during the discussion. Nor does this appear to be a situation in which the declarant was under some obvious, immediate pressure from the prosecution or had a clear motivation to lie. *Cf. United States v. Mackin*, 561 F.2d 958, 962 (D.C.Cir.) (declarant had motive to lie to impress her probation officer with her rehabilitation), *cert. denied sub nom., Gibson v. United States*, 434 U.S. 959, 98 S.Ct. 490, 54 L.Ed.2d 319 (1977); *United States v. Gonzalez*, 559 F.2d 1271 (5th Cir. 1977) (grand jury transcript disclosed that declarant obviously decided after pressure by prosecutor to testify). In this case, no pre-indictment agreement had been reached, *cf. United States v. Atkins*, 618 F.2d 366 (5th Cir. 1980) (statement inadmissible in part because made after plea bargain), and there was no obvious reason for Fardella to have contrived his own complicity in the conspiracy or to have asserted Ditizio's innocence.

■ Thus, I conclude that it is sufficiently likely that this testimony could be introduced under Rule 804(b)(3) at a second trial that the first *Boscia* consideration is satisfied.[1]

1. I should emphasize at this point that in ruling on Ditizio's motion to sever I am only required under *Boscia* to find that there is a significant

likelihood that this testimony could be introduced. It should be clear, therefore, that this is not a ruling that this hearsay testimony will in

■ In the alternative, I am also persuaded that this testimony could probably be admitted under Rule 804(b)(5) at a second trial: It is sufficiently reliable, as I have discussed above; it clearly relates to a material fact; it is more probative on this particular point than other evidence which I am aware of; and, finally, in my judgment, the interests of justice would be served by admitting this important exculpatory evidence. Indeed, admitting this testimony is consonant with the principles set forth in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) in which Justice Powell stated:

> Few rights are more fundamental than that of an accused to present witnesses in his own defense. In the exercise of this right, the accused ... must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which is in fact likely to be trustworthy have long existed.... In ... circumstances [in which testimony is both trustworthy and critical to the accused's defense], where constitutional rights directly affecting the ascertainment are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.

*Id.* at 302, 93 S.Ct. at 1049 (citations omitted). Thus, under rule 804(b)(5) I also conclude that this testimony is so likely to be admitted at a second trial that defendant Ditizio has met the first condition required by *Boscia*.²

Because my disposition of the hearsay issue suffices to resolve the first *Boscia* consideration in Ditizio's favor, I need not address at this point the question whether the judicial immunity theory set forth in *Government of Virgin Islands v. Smith, supra*, provides an independent ground for granting severance. However, should I determine at a second trial that the hearsay testimony discussed above is not admissible, the *Smith* issue would then be squarely presented and could be resolved at that time.³

■ As to the second and third *Boscia* considerations—concerning the extent to which the testimony is exculpatory and is vulnerable to impeachment—it seems clear that this testimony would tend to exculpate Ditizio, and, although there have been no assertions either way on the impeachment consideration, I can not see any compelling reason to deny severance on this basis. To be sure, the Government may seek to persuade the jury that Fardella's statements are not reliable, but this possibility does not convince me that severance is inappropriate.

■ Finally, the anticipated length and complexity of this case suggest that I should attribute significant weight to those considerations of judicial economy which generally favor joint trials. However, the risk of unduly constricting Ditizio's defense by preventing him from introducing important exculpatory testimony in a joint trial is sufficiently clear that, in my judgment, considerations of judicial economy are outweighed.

For the foregoing reasons, defendant Ditizio's motion for severance will be granted.

---

fact be admitted at a second trial; that determination, of course, must be made at the time of trial. *See* Fed.R.Evid. 104(a) (trial judge must make finding of sufficient corroboration before admitting evidence).

**2.** *See* note 1 *supra*.

**3.** While I am persuaded that the Third Circuit's analysis in *Smith* is sound, a cautious approach

in this area—particularly when a motion to sever is grounded on a possible need for judicial immunity under *Smith*—is appropriate since the case appears to be the minority view, *see United States v. Herbst*, 641 F.2d 1161, 1168 (5th Cir. 1981), and has been criticized by other circuit courts. *See United States v. Turkish*, 623 F.2d 769, 777 (2d Cir. 1980).