**GOVERNMENT OF the VIRGIN ISLANDS, Appellee,**

v.

**Glen SMITH, Elton Rieara, Elvis Smith and Roland Georges, Appellants.**

**Nos. 79–1212 to 79–1215.**

United States Court of Appeals, Third Circuit.

Argued Dec. 7, 1979.

Decided Feb. 5, 1980.

Peter A. Martin, Dudley, Martin & Dudley, Charlotte Amalie, St. Thomas, V. I., for Glen Smith.

Judith L. Bourne, Asst. Federal Public Defender, Charlotte Amalie, St. Thomas, V. I., for Rieara.

Herbert Muriel, St. Thomas, V. I., for Elvis Smith.

David S. Hoffenberg, Loud, Watts & Murnan, Charlotte Amalie, St. Thomas, V. I., for Georges.

Ishmael A. Meyers, U. S. Atty., District of the Virgin Islands, Terry M. Halpern, Asst. U. S. Atty., District of the Virgin Islands, Charlotte Amalie, St. Thomas, V. I., William C. Bryson, James A. Hunolt, Attys., App. Section, Crim. Div., Dept. of Justice, Washington, D. C., for appellee.

Before GIBBONS, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

In *United States v. Herman*, 589 F.2d 1191 (3d Cir. 1978) *cert. denied* 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979), this court explored the circumstances in which a defendant may claim that immunity must be provided to defense witnesses. Although the *Herman* court rejected the claim for immunity in the case before it, it recognized two possible situations in which due process clause might compel the granting of immunity to defense witnesses. First, it noted that in cases where government actions denying use immunity to defense witnesses were undertaken with the "deliberate intention of distorting the judi-

cial fact finding process," the court has the remedial power to order acquittal unless on retrial the government grants statutory immunity. 589 F.2d at 1204. Secondly, it noted that in certain cases a court may have "inherent authority to effectuate the defendant's compulsory process right by conferring a *judicially* fashioned immunity upon a witness whose testimony is essential to an effective defense." *Id.* (emphasis added).

The question of defense witness immunity surfaces once again in this case. Here, as contrasted with *Herman*, the record reveals sufficient evidence to constitute a *prima facie* showing under either of these due process theories.[1] Accordingly, we remand to the district court for an evidentiary hearing under the *Herman* guidelines to determine whether due process requires that defense witness immunity be granted.

### I.

In the early afternoon of June 16, 1978, Roy Phipps was assaulted by four young men. During the assault, which took place at a Saint Thomas housing project, 25 dollars was stolen from Phipps' pockets. This assault occurred shortly after another incident, allegedly involving a marijuana swindle, had taken place in a nearby courtyard. This latter altercation had also involved Phipps and had attracted the attention of a group of young men. It is undisputed that Phipps' assailants were members of this group, but their exact identities were the prime subject of controversy at trial.

During the course of the trial, three of the defendants—Glen Smith (hereinafter referred to as "Glen"), Elton Rieara and Roland Georges—sought to introduce the testimony of one Ernesto Sanchez. Sanchez had previously made a statement to the police which inculpated himself as one of Phipps' attackers[2] and identified three

---

1. While we recognize that this court has not adopted the statutory theory advocated by the dissent in *Herman*, 589 F.2d at 1205, with its abuse of discretion standard, it bears noting that the result which would be reached under such a theory is consistent with the result we

reach here under *Herman's* due process analysis.

2. Sanchez was also indirectly inculpated by Phipps' testimony. Phipps had stated that one of his assailants was a "tall, slender Puerto

others, who were nicknamed "Scotto," "Mon" and "Mouth," as perpetrators of the crime. Apparently, these nicknames were not the nicknames by which Glen, Rieara or Georges were known. Elvis Smith, on the other hand, was known as "Scotto." Thus, while Sanchez' statement incriminated Elvis Smith, it would have implicitly exculpated the other three defendants, Glen, Rieara and Georges. Therefore, hoping that Sanchez' trial testimony would track his earlier statement to the police, these three defendants (hereinafter referred to as the "defense") called Sanchez as a defense witness.[3]

Sanchez' testimony was not so easily forthcoming, however. He declined to make any significant substantive statement, claiming his fifth amendment privilege against self-incrimination. T.R. at 249–50. At that point, the defense, asserting an exception to the hearsay rule, claimed that Sanchez had become an unavailable witness and thereby sought to introduce into evidence the earlier statement which Sanchez made to the police. T.R. at 250. The government opposed the introduction of the statement arguing that it would be unable to cross-examine the hearsay declarant (Sanchez). T.R. at 252. The trial court sustained the government's objection.

After having been unsuccessful in obtaining the admission into evidence of Sanchez'

prior statement, the defense then raised the subject of granting Sanchez immunity. T.R. at 253. Sanchez, who was less than sixteen years of age when the assault against Phipps was committed, came within the exclusive jurisdiction of the juvenile authorities in the Virgin Island Attorney General's office. The record reveals that Mr. Leonard Francis of that office had offered to grant Sanchez use immunity on the condition, prompted only out of prosecutorial courtesy, that the United States Attorney consent. T.R. at 206, 253. For reasons which were unexplained at trial and which the United States Attorney did not explain to this court at oral argument, this consent was never granted. Accordingly, the potentially exculpatory evidence which the defense desired to offer through Sanchez' testimony, was never presented to the jury.

Without the benefit of Sanchez' testimony, all four defendants were convicted on charges of robbery, and each was sentenced to six and one-half years of imprisonment. Each of the defendants has set forth various errors on appeal. A primary contention, common to Glen, Georges and Rieara is that their due process rights were violated by the failure to grant immunity to Sanchez. We find no basis by which to sustain any other claim they assert except for the immunity error.[4] We therefore af-

Rican" who had carried a knife. Sanchez apparently met that physical description.

**3.** It was represented to the court at oral argument that Sanchez was in the custody of the United States Attorney prior to trial and that defense counsel were denied access to him. Therefore, when the defendants called Sanchez, they could not predict the content of his testimony. The government has thus far failed to explain the basis of its exclusive proprietary claim to Sanchez as a witness or why it sequestered Sanchez prior to the trial.

**4.** All four defendants raise numerous arguments in addition to their claim that immunity should have been granted to a defense witness.
Glen Smith claims in appeal No. 79–1212:
1. That the trial court erred in denying a motion to reverse based on delay in furnishing the transcript.
2. That the trial court erred in refusing to strike Phipps' testimony.

3. That the trial court erred by denying a motion to dismiss based upon a change of time negating Glen Smith's alibi.
4. That the trial court erred in refusing to admit the extra-judicial statement of Ernesto Sanchez.
5. That the prosecutor's conduct constituted reversible error based upon prejudicial inferences.
6. That the trial court erred in instructing the jury on extra-judicial identification.
7. That the trial court erred in instructing the jury on flight.
8. That the trial court erred in rebutting defense counsel's argument concerning the jury's being the final judge of the facts.
9. That the trial court erred in rebutting defense counsel's argument regarding the lack of corroboration.
Elton Rieara claims in appeal No. 79–1213:
1. That the trial court erred in denying defendant's motion for acquittal.

firm, by separate judgment order, the conviction of Elvis Smith who could not have benefited from Sanchez' testimony. With respect to the remaining three defendants —Glen, Rieara and Georges—all or any of whom might be exculpated by Sanchez' testimony, we remand for an evidentiary hearing to determine whether Sanchez should be immunized so as not to violate the defendants' due process rights.

## II.

### A.

In *United States v. Herman,* supra, this court took specific note of "our governmental system's strong tradition of deference to prosecutorial discretion" in conjunction with granting statutory immunity. 589 F.2d at 1203. It also noted the "tendency of the executive branch to exercise that discretion in ways that make it more likely that defendants will be convicted." *Id.* at 1204. Nevertheless, *Herman* recognized that under certain circumstances due process may require that the government afford use immunity for a defense witness. This recognition followed from this court's decision in *United States v. Morrison,* 535 F.2d 223 (3d Cir. 1976) which held that where prosecutorial misconduct occurred (in that case, intimidation of a defense witness), the government could be directed to either obtain use immunity, so that the witness could testify, or suffer a judgment of acquittal. *Morrison,* however, did not specify the burden which the defendant was required to meet in order to obtain such extraordinary relief. The dimensions of the defendant's burden, in this respect, were not established until *Herman* when this court stated:

[W]e think that the evidentiary showing required to justify reversal on that ground must be a substantial one. The defendant must be prepared to show that the government's decisions were made with the deliberate intention of distorting the judicial fact finding process.

589 F.2d at 1204.

Thus, with full recognition that a court seriously intrudes into the realm of the executive when it orders the government to grant statutory immunity to a defense witness, *Herman* nonetheless affirmed the availability of such a remedy. But it conditioned this remedy on a showing by the defendant that the government's decision not to provide immunity was a decision made "with the deliberate intention of distorting the judicial factfinding process." Absent this type of prosecutorial misconduct, a defendant is foreclosed from insisting that statutory immunity be granted his witness.

In *Herman,* no evidence of "distortion" or prosecutorial misconduct appeared. Hence the sought after immunity was not ordered. By contrast, the record in this case reveals a *prima facie* showing of government action that might well fall within guidelines of *Morrison* or *Herman.*[5] We therefore turn to a consideration of the record.

2. That the trial court erred in refusing to admit the prior statement of Ernesto Sanchez.

Elvis Smith claims in appeal No. 79–1214:
1. That the trial court committed reversible error by admitting the hearsay testimony of Ruth Dazle.

Roland Georges claims in appeal No. 79–1215:
1. That prosecution cross-examination of Roland Georges respecting alleged threats warranted a mistrial.
2. That the testimony of Mrs. Dazle as to statements made by Roland Georges constituted inadmissible hearsay.
3. That the prior statement of Ernesto Sanchez, impliedly exculpating Roland Georges, should have been admitted into evidence.

After consideration of these contentions, we reject them all as without merit. Moreover, inasmuch as the defense witness immunity contention is not claimed by defendant Elvis Smith, since the evidence which would be forthcoming would inculpate, rather than exculpate him, we have disposed of his appeal, at 79–1214, simultaneously with the filing of this opinion.

5. We observe that trial in the instant case did not commence until November 15, 1978. *Herman* was not decided until later that month. It is therefore evident that neither counsel or the court had the benefit of *Herman's* immunity discussion. *Herman* was discussed before this court on appeal, however. *See* note 8 *infra.*

### B.

■ Our review of the record reveals that the United States Attorney's decision not to consent to immunity for Sanchez was apparently intimately involved with the strategy for prosecuting appellants' cases. First, the prosecution was aware that its case, which rested almost entirely on Phipps' testimony, was inherently weak.[6] Even though Sanchez' testimony, if consistent with his earlier statement to the police, might be vulnerable to a credibility attack, it would be severely damaging to the prosecution's case against three of the defendants. Secondly, by refusing to consent to the Attorney General's proposed immunization of Sanchez, the government not only prevented Sanchez from testifying at trial, but that refusal also furnished the predicate for the government's objection to admitting Sanchez' statement given to the police. That argument focussed on Sanchez' unavailability for cross-examination about his prior statement, and accordingly the government claimed that the statement should not be admitted. *See* T.R. at 250–52. Finally, and most important, the fact that the United States Attorney had no jurisdiction over Sanchez as a juvenile and gave no justification for refusing to consent to the immunity offered by the juvenile authorities who did have jurisdiction over Sanchez, suggests that the prosecution deliberately intended to keep this highly relevant, and possibly exculpatory, evidence from the jury.

If after an evidentiary hearing the district court finds that Sanchez' testimony would be relevant[7] and that the actions of the United States Attorney, as they bear upon Sanchez' refusal to testify and the immunity proffered by the Attorney General, were taken with the deliberate intention of distorting the factfinding process, then the district court should enter a judgment of acquittal as to defendants Glen, Rieara and Georges, unless the government consents to grant statutory use immunity to Sanchez. *See United States v. Morrison, supra.* In the latter event, obviously a new trial will be warranted.

### III.

### A.

In addition to the statutory immunity discussed in *Herman* and in Part II above, *Herman* also suggested the availability of still another form of immunity, which stems from a court's inherent power:

> But while we think that the court has no power to order a remedial grant of statutory immunity to a defense witness absent a showing of unconstitutional abuse, a case might be made that the *court has inherent authority to effectuate the defendant's compulsory process right by conferring a judicially fashioned immunity upon a witness whose testimony is essential to an effective defense.*

589 F.2d at 1204 (emphasis added). *See also United States v. Bacheler*, 611 F.2d 443 (3d Cir. 1979); *In Re Grand Jury Empanelled February 14, 1978*, 603 F.2d 469, 475 (3d Cir. 1979).

■ Immunity granted in these circumstances differs from the statutory immunity discussed in Part II, *supra*, in two respects. First the need for "judicial" immunity is triggered, not by prosecutorial misconduct or intentional distortion of the trial process, but by the fact that the defendant is prevented from presenting exculpatory evidence which is crucial to his case. Second, the immunity granted is a *court decreed*

---

6. Phipps was slightly retarded and had various other physical ailments. His testimony at trial was not always responsive to questioning and was sometimes confusing and difficult for the court and the attorneys to comprehend.

7. Immunity granted under this theory need not be predicated upon a finding that the witness' testimony is clearly exculpatory or otherwise essential to the defendant's case. *Cf.* Part III

*infra.* As this court noted in *United States v. Morrison, supra* :

> . . . where the Government has prevented the defendant's witness from testifying freely before the jury, it cannot be held that the jury would not have believed the testimony or that the error is harmless.

535 F.2d at 228. The trial court must find, however, that the proffered testimony would be relevant to the defendant's case.

immunity; it is not achieved by any order directed to the executive, requiring the executive to provide statutory immunity.

In *Herman* we were reluctant to do more than recognize the availability of judicial immunity. There, while recognizing that problems would exist if immunity would be decreed, we nevertheless, adverted to the justification for employing such a power, a justification arising from the "due process right to have clearly exculpatory evidence presented to the jury, at least when there is no strong countervailing systemic interest which justifies its exclusion . . . ." 589 F.2d at 1204. We laid the groundwork in *Herman* for such exercise of judicial power, and foresaw its application in certain circumstances. However, the majority in *Herman* did not dwell at any great length on this theory as it had never been raised in the district court nor had it been discussed in the briefs or at oral argument on appeal. 589 F.2d at 1204. Judge Gibbons, writing for the court, properly observed that "[i]f such inherent power [to grant judicial immunity] is to be recognized and standards formulated for its exercise, that task should be performed in a case where the issue was presented by the defendant, and perhaps by the court sitting en banc." *Id.* at 1204–05.

While we sit here only as a panel, and not *en banc*, we are not reluctant, as we were in *Herman*, to face the immunity issue. It has been presented by the defendants,[8] and the evidence, at it is disclosed by the trial record, appears initially at least, to have been tailored to conform to the theory which the *Herman* court projected.

### B.

As we noted in *Herman, Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), albeit in a context different than immunity, furnishes strong sup-port for the holding that immunity may be required for a defense witness if realistic meaning is to be given to a defendant's due process right to have exculpatory evidence presented to the jury. 589 F.2d at 1204. In *Chambers*, the Supreme Court held that Mississippi's strict adherence to its rules of evidence, which prevented the defendant, Chambers, from introducing trustworthy, exculpatory evidence, effectively denied Chambers a fair trial in accordance with the principles of due process. Chambers had sought to cross-examine a witness who had previously confessed to the same crime; he was prevented from doing so by the state's evidence rule against a party impeaching his own witness. In addition, rigid application of Mississippi's rule against hearsay prevented Chambers from introducing other informal admissions of the witness' guilt which would have exculpated Chambers. The Supreme Court, recognizing the crucial importance of the excluded evidence, reversed Chambers' conviction, holding that his due process right to present an effective defense had been violated.[9] To remedy the constitutional deficiency found in *Chambers*, the Court required that Chambers be retried so that the exculpatory evidence, which he had originally been denied, could be admitted at the new trial.

In this case the *prima facie* due process violation revealed by the record, *i. e.*, the denial of exculpatory evidence to which Sanchez could testify, is not different in substance than the violation found in *Chambers*. For paraphrasing *Chambers* by substituting the names of the principals in this case, it is apparent that "[t]o the extent that McDonald's sworn confession [Sanchez's police statement] tended to incriminate him [Sanchez and Elvis Smith], it tended also to exculpate Chambers [Glen, Rieara and Georges]." 410 U.S. at 297, 93 S.Ct. at 1047.

8. This court *sua sponte* directed that supplemental briefs addressed specifically to this issue be filed by all parties prior to the oral argument.

9. The Court stressed the fact that the policies which prompted the state's evidentiary rules were not offended by the evidence which Chambers sought to introduce. Recognizing this, the Court refused to let the evidence rules "be applied mechanistically to defeat the ends of justice." 410 U.S. at 302, 93 S.Ct. at 1049.

Other cases involving due process violations based on denying a defendant an effective presentation of his defense have fashioned remedies appropriate to the context in which the violations occurred. Although much that was said in *Chambers* was original to that case, the basic constitutional doctrine—that the right to present an effective defense inheres in the guarantee of a fair trial—was not new. For example, in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) the Supreme Court held that an indigent defendant "haled into court . . . cannot be assured a fair trial unless counsel is provided for him." *Id.* at 344, 83 S.Ct. at 796. Consequently, the Court ruled that due process requires that the sixth amendment right to counsel be imposed on the states. Even earlier, in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Court had recognized the same right when it stated that the government's "informers privilege" must give way "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause . . . ." *Id.* at 60–61, 77 S.Ct. at 628. Again, in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Government's actions in suppressing exculpatory materials known to it, but not known to the defendant, was found to trench upon the same due process right to present an effective defense as is implicated here. *Chambers, Roviaro* and *Brady*, like *Gideon v. Wainwright*, recognize that the essential task of a criminal trial is to search for truth, and that this search is not furthered by rules which turn the trial into a mere "poker game" to be won by the most skilled tactician. *See Williams v. Florida*, 399 U.S. 78, 82, 90 S.Ct. 1893, 1896, 26 L.Ed.2d 446 (1970). Thus, these cases resulted in new trials, thereby vindicating the defendant's right to present an effective defense. We are therefore not concerned with a new or unique constitutional right, but rather with the prescription of a new remedy to protect an established right.

While the constitutional violation in this case is the same as the violation found in the *Chambers* and *Brady* genre of cases—*i.e.*, depriving a defendant of clearly exculpatory evidence necessary to present an effective defense—a new trial such as was provided in those cases would be insufficient to remedy the constitutional infringement which may have occurred here. Any remedy in the present case must take into account the fact that a retrial would be meaningless unless the evidence in issue may be compelled. That compulsion can only be accomplished in the context of a case such as the instant one, by granting immunity to a defense witness, once it is established, however, that the conditions for such a remedy have been satisfied. Although we have characterized the immunity remedy as "new," it is new only in the sense of its application to this type of case. Both the Supreme Court and this court have previously found an inherent judicial power to grant witness immunity in order to vindicate constitutional rights. *See Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968) (testimony at 4th Amendment suppression hearing); *In re Grand Jury Investigation*, 587 F.2d 589, 597 (3d Cir. 1978) (testimony predicate to Speech and Debate Clause defense); *United States v. Inmon*, 568 F.2d 326, 332–33 (3d Cir. 1978) (testimony predicate to double jeopardy defense). Moreover, as the *Herman* court indicated when referring to *Simmons*, the Supreme Court case which pioneered the concept of judicial immunity:

It would seem that a case in which clearly exculpatory testimony would be excluded because of a witness's assertion of the fifth amendment privilege would present an even more compelling justification for such a grant [of judicial immunity] than that accepted in *Simmons* itself.

589 F.2d at 1204.

■ Due to the unique and affirmative nature of the immunity remedy and fundamental considerations of separation of powers, grants of immunity to defense witnesses must be bounded by special safeguards and must be made subject to special condi-

tions. This does not mean, however, that a due process right in an immunity context is to be protected any less vigilantly than the same due process right which arises in a *Chambers* or a *Brady* context. Indeed, the safeguards which we mandate before requiring this remedy are common to those found in *Chambers*.[10] The due process rights in both situations are entitled to the same protection. But *Chambers* and *Herman* both dictate that the opportunities for judicial use of this immunity power must be clearly limited: immunity must be properly sought in the district court; the defense witness must be available to testify; the proffered testimony must be clearly exculpatory; the testimony must be essential; and there must be no strong governmental interests which countervail against a grant of immunity.[11]

■ Of crucial significance to the Supreme Court's decision in *Chambers*, was the clearly exculpatory and essential nature of the evidence which was excluded. We have grave doubts that the Court would

have mandated deviation from Mississippi's rules of evidence, had it not been necessary to preserve the "fundamental fairness" of the criminal trial.[12] Moreover, the Court was able to appreciate the significance of the excluded evidence because it had been clearly identified by the defendant at trial who had made a proper application for its admission. Similarly, before a court can grant immunity to a defense witness, it must be clear that an application has been made to the district court naming the proposed witness and specifying the particulars of the witness' testimony. In addition, the witness must be available and the defendant must make a convincing showing sufficient to satisfy the court that the testimony which will be forthcoming is both clearly exculpatory and essential to the defendant's case. Immunity will be denied if the proffered testimony is found to be ambiguous, not clearly exculpatory, cumulative or if it is found to relate only to the credibility of the government's witnesses.[13] Once the

**10.** Central to the *Chambers'* analysis were two factors: the clearly exculpatory nature of the excluded evidence and the fact that the state had no interest in rigid enforcement of its evidentiary rules.

**11.** Prior cases in this circuit do not preclude this form of judicial immunity. *United States v. Berrigan*, 482 F.2d 171, 190 (3d Cir. 1973), disclaimed a court's blanket power to grant immunity to "*any* defense witnesses who might refuse to give testimony on grounds of self-incrimination." (emphasis added) The requirements for judicial immunity which we specify are much more stringent: the power to grant judicial immunity only applies to a witness whose testimony is exculpatory and essential to the defense and when there are no strong counterveiling government interests. Neither *United States v. Rocco*, 587 F.2d 144 (3d Cir. 1978) *cert. denied* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979), nor *United States v. Niederberger*, 580 F.2d 63, *cert. denied*, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978), discuss the subject of *judicially fashioned* immunity for essential defense witnesses. Hence, they do not bear on our holding here. Insofar as both opinions discuss *statutory* immunity, which is the subject of this opinion in Part II *supra*, neither case was decided in a context involving prosecutorial misconduct or deliberate distortion of the trial process by the government. Therefore their authority, in respect to immunity, is limited and in no way detracts

from either the statutory immunity or the judicial immunity analysis in which we have here indulged.

**12.** It is to be noted that the Court, in *Chambers*, did not hold the challenged Mississippi evidence rules to be unconstitutional. Instead of striking the rules completely, the Court found, for the purposes of the case before it, that erection of an exception to the rules would accomplish the required result.

**13.** The standards formulated here take into account the objections to judicial immunity which have recently been expressed in the opinions of other courts of appeals. For example, in *United States v. Klauber*, 611 F.2d 512 (4th Cir. 1979), the Fourth Circuit, in refusing to grant immunity to a defense witness, noted that the defense witness had not appeared in court, that there was no showing that the witness would be able to claim the fifth amendment privilege and that the defendant had made no showing as to what the content of the proffered testimony would be—let alone whether it would be exculpatory. Similarly, in *United States v. Wright*, 588 F.2d 31 (2d Cir. 1978) *cert. denied*, 440 U.S. 917, 99 S.Ct. 1236, 59 L.Ed.2d 467 (1979), the Second Circuit rejected a claim of defense witness immunity when the defendant failed to demonstrate that the witness would not testify without immunity or that the failure to grant immunity prejudiced

court determines that the defendant has satisfied this threshold burden, the focus then shifts to consideration of the state's countervailing interests, if any.

As we have observed, *see* note 12 *supra,* in *Chambers* the Supreme Court did not strike down the Mississippi evidence rules which were challenged. It merely held that the state had no legitimate interest in the mechanical application of those rules. Presumably, if Mississippi had a legitimate countervailing interest in the rigid application of its evidence rules, that interest would have figured more prominently in the Court's decision. Here, where we are concerned not with mere evidentiary rulings, but with an affirmative grant of relief in the form of immunity, traditionally an exercise of the executive's power, it is even more imperative that we recognize, and be solicitous towards, legitimate state interests. In the immunity area we cannot ignore, nor will we blind ourselves to the effect that a grant of immunity (as contrasted with an erroneous evidentiary ruling) may have on persons who are not parties to the criminal proceeding and on society as a whole. "[A] person suspected of crime should not be empowered to give his confederates an immunity bath." *In re Kilgo,* 484 F.2d 1215, 1222 (4th Cir. 1973).

Grant of judicial immunity impact most directly on the government's decision to prosecute and on the manner of its prosecution. Frequently, the government will have a legitimate interest in prosecuting the very witness whom the defendant seeks to immunize. But this does not mean that no accommodation can be reached between the government's interest as prosecutor and the defendant's constitutional right to present an effective and entire case. In many instances, use immunity, which was all that

his trial. Because of the standards we impose before judicial immunity can be granted, *Klauber* and *Wright* are not inconsistent with the result reached in this opinion.

14. For discussion of the "cost" of use immunity in this context *see* Note, *The Sixth Amendment Right to Have Use Immunity Granted to Defense Witnesses,* 91 Harv.L.Rev. 1266, 1274–80 (1978).

was sought here and is all that is constitutionally required, *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), is virtually costless to the government. For example, the government may have already assembled all the evidence necessary to prosecute the witness independent of the witness' testimony. Or the government may be able to "sterilize" the testimony of the immunized witness and so isolate it from any future testimony of the witness that it would not trench upon any of the witness' constitutional rights if he were subsequently to be prosecuted. *See Kastigar v. United States, supra.* Finally, the government may seek a postponement of the defendant's trial so that it may complete its investigation of the defense witness who is the subject of an immunity application.[14] While these options are not intended to be all inclusive, if any of these options are available to the government, then it would appear to us that the government would have no significant interests which countervail the defendant's due process rights. Any interest the government may have in withholding immunity in such a situation would be purely formal, possibly suspect and should not, without close scrutiny, impede a judicial grant of immunity.[15]

On the other hand, where the government either rebuts the defendant's showing or establishes that the public interest would be disserved by a grant of immunity to a defense witness or that such a grant would entail significant costs to it, it would be appropriate for the immunity application to be denied. In either event, whether it grants or denies the application, the district court should be careful to explain the basis of its ruling. We hold that, in cases where the government can present

15. In *Herman,* this court specifically stated:
Where the prosecution's interest in withholding immunity was merely formal, the *Chambers* rationale might perhaps permit a grant of immunity.
589 F.2d at 1204 n.13.

no strong countervailing interest, a court has inherent authority to immunize a witness capable of providing clearly exculpatory evidence on behalf of a defendant who has met our stated conditions.

### C.

The record in this case shows that the issue of defense witness immunity was properly raised in the district court. In addition, the record clearly suggests that the defense would be able to offer proof that Sanchez' testimony would be exculpatory. Based on his previous statement to the police, it has been contended before us that Sanchez would testify that Glen, Rieara and Georges did not participate in the crime. This claim might be buttressed if defense counsel are given the opportunity to interview Sanchez. *See* note 2 *supra.* Moreover, it would be difficult to argue that Sanchez' eyewitness testimony (as appears in the police statement) would not be essential to the defense case.

On the other side of the coin, it appears from the record that the United States Attorney would have little claim to any governmental interest in opposing a grant of immunity to Sanchez. As we have previously observed, only the Attorney General of the Virgin Islands has jurisdiction to prosecute Sanchez or, for that matter, to immunize him. The bar to such immunization was erected when, as a matter of comity, the Attorney General asked for the consent of the United States Attorney. For reasons not explained in this record that consent was not forthcoming and the Attorney General, as a consequence, refused to immunize Sanchez.

Nonetheless, whether judicial immunity is warranted is a matter to be determined by the district court in the first instance. We therefore vacate the sentences of Glen, Rieara and Georges and remand to the district court. On remand it will be for the district court, after an evidentiary hearing, to determine whether judicial immunity is

required to vindicate the defendants' rights to a fair trial. If immunity is so required, then a new trial shall be ordered. If not, and the district court has also found in accordance with Part II, *supra,* that no statutory immunity is warranted, then the judgments of sentence entered against defendants Glen, Rieara and Georges shall be reinstated, subject only to our further review if sought.

### IV.

We have discussed two theories in which due process requires the testimony of defense witnesses to be immunized. When the court finds prosecutorial misconduct by the government's deliberate intent to disrupt the factfinding process, it should order the government to grant statutory immunity to the defense witness or face a judgment of acquittal. In addition, even if there is no evidence of such prosecutorial misconduct, when it is found that a potential defense witness can offer testimony which is clearly exculpatory and essential to the defense case and when the government has no strong interest in withholding use immunity, the court should grant judicial immunity to the witness in order to vindicate the defendant's constitutional right to a fair trial. The record on this appeal establishes that either of these theories may be available to the defense.

We will therefore vacate the sentences of Glen, Rieara and Georges and remand to the district court for an evidentiary hearing and further proceedings not inconsistent with this opinion.[16]

---

**16.** As pointed out at pp. 967–968 and note 4, *supra,* the due process/immunity theories have no application to the appeal of Elvis Smith (No. 79–1214). We therefore affirm his conviction.