UNITED STATES of America

v.

Charles Wallace NOLAN, Jr.

**Crim. No. 81–136.**

United States District Court,
W. D. Pennsylvania.

April 8, 1982.

Michael A. Cauley, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

H. David Rothman, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

TEITELBAUM, District Judge.

On November 6, 1981, the defendant Charles Wallace Nolan, Jr., was found guilty of conspiracy to import morphine (Count I); conspiracy to possess morphine with intent to distribute (Count II); importation of morphine (Counts III and IV); possession of morphine with intent to distribute (Counts V and VI); and, possession of marijuana (Count VII). Thereafter, the defendant filed a motion for judgment of acquittal or, in the alternative for a new trial. In his initial motion, the defendant made twenty allegations of error and in a supplemental motion has advanced another seventy allegations of error. The Court has fully considered these allegations and finds it unnecessary to address many of them with particularity. However the Court believes that the defendant's request for a judicial grant of general use immunity for a prospective defense witness is a sufficiently novel issue to merit further discussion.

Prior to trial the defendant, through his attorney, made a number of pretrial motions, including a motion to grant immunity to four prospective defense witnesses: James Flora, a named unindicted coconspirator; Charles Mills; and the defendant's parents. In support of this motion the defendant noted that the charges pending in the instant case alleged criminal activity during a period in which the defendant was admittedly violating parole from a sentence imposed in a different matter. The defendant suggested that because he was violating his parole, those persons who knew him sufficiently well to give evidence on his behalf in the instant case would be unavailable to him without a grant of judicial immunity because those persons were also aware he was violating parole and would probably need to invoke the protection of the Fifth Amendment to avoid incriminating themselves on charges of aiding a fugitive.

In considering this motion, this Court looked for guidance to *Government of the Virgin Islands v. Smith,* 615 F.2d 964 (3d Cir. 1980) and *United States v. Herman,* 589 F.2d 1191 (3d Cir. 1978), *cert. denied,* 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979). In *Herman,* the Court of Appeals recognized that there was inherent judicial power to grant judicial immunity to a defense witness if the testimony being sought was essential to an effective defense. This exercise of this power was the subject of further explanation in *Smith.* In *Smith,* the Court of Appeals articulated five factors to consider before granting judicial use immunity: 1) immunity must be properly sought; 2) the witness must be available; 3) the proffered testimony must be clearly exculpatory; 4) the testimony must be essential; and 5) there must be no governmental interests which countervail the grant of immunity.

In light of the above legal standards, the Court denied the defendant's pretrial motion. The Court was satisfied that immunity had been properly sought and that there was a substantial likelihood that the witnesses were available. However, it appeared to the Court that the offers of proof for the four prospective defense witnesses were general and difficult to evaluate. Moreover, the offer of proof was that these witnesses would corroborate the defendant's testimony in various particulars. Because of the generality of the offer and because of the corroborative nature of the proposed testimony, this Court denied the pretrial motion for immunity without prejudice to renewal at that point in the trial where the relevance of the proposed testimony and need for it could be examined in a concrete setting.[1]

Subsequently, the request for a judicial grant of general use immunity for James Flora and the defendant's father was re-

---

1. While the Court denied the defendant's pretrial motion with leave to renew it during trial, that action does not mean that the initial request was improper. Rather because the need for corroborative testimony could not be evaluated outside the trial context, the Court understood that the request was not ripe for decision prior to trial.

newed.[2] To understand the context in which the motion was renewed it is necessary to briefly summarize the case against Mr. Nolan and the defense testimony that had been presented to that point. In its case in chief, the government relied on the testimony of two informants who had previously pleaded guilty to charges stemming from the illegal importation of morphine from India and the subsequent illicit distribution of that substance in this judicial district. These informers identified the defendant as the person who initially made the international drug contacts and further implicated the defendant as having personally imported morphine on several occasions. In addition, the government relied on some physical evidence including a quantity of morphine found in the defendant's room when he was arrested.

The defendant, in an effort to meet the accusations against him, took the stand on his own behalf. The defendant's testimony in many respects was directly contrary to the testimony of the informants, principally Mr. Danko.[3] The defendant admitted he had violated his parole and was a fugitive. He said he resorted to the use of fictitious names only to evade capture and that he obtained passports in those names also. He also stated he travelled frequently, and went to India because he liked the people and to obtain silks and silver for importation to Europe and the United States. He confessed that he was a narcotics addict, and that he had illicitly brought hashish into the United States. The defendant emphatically denied that he had ever brought morphine into the United States and contended that the quantity in his room at the time of his arrest was only for personal use and had been purchased in the United States from Mr. Danko.

The defendant urges, and this Court agrees, that given the diametrically opposed testimony of Mr. Danko and Mr. Nolan and the significant role of Mr. Danko's testimony in the government's case, that for the jury to convict Mr. Nolan, as it did, that the jury must have resolved major determinations of credibility in favor of Mr. Danko and against Mr. Nolan. The defendant thus argues that the determination of guilt hinged on his credibility. The defendant continues that therefore corroborative testimony was essential to an effective defense and that only by granting general judicial use immunity to James Flora could Mr. Nolan have access to essential corroborative testimony.

The Court considered these arguments at a hearing held out of the presence of the jury when the defendant renewed his motion for a grant of general judicial use immunity. At that hearing, the defendant expressed his desire to call James Flora to provide some corroborative testimony. The defendant also expressed his concern that if called Mr. Flora would invoke the protection of the Fifth Amendment and decline to testify. The defendant urged this Court to grant general use immunity to Mr. Flora thereby giving him protection coextensive with his Fifth Amendment rights and make him available to testify on Mr. Nolan's behalf. The defendant represented that if called and if granted general use immunity, Mr. Flora would testify that in consideration for a loan of $2,000.00 from Mr. Nolan, Mr. Flora smuggled hashish into Switzerland; that the $2000 was repaid to Mr. Nolan shortly before his arrest; that he saw Mr. Danko and Ms. Wojtkowski sew morphine into dress buttons in India; that

---

**2.** It became unnecessary to consider the request for immunity for the defendant's father when the government agreed not to use any testimony given by the father against him. See Transcript at pg 649. The Court notes also that the defendant failed to make use of this promise because his father was never called to testify.

**3.** For example Mr. Danko testified that he had been told by Mr. Nolan that Mr. Nolan had a

contact in India who could sew morphine into dress buttons for smuggling into the United States. Mr. Nolan's testimony was contradictory. He stated that while in India he visited Mr. Danko in India and saw Mr. Danko and Ms. Wojtkowski sewing morphine into dress buttons.

In a number of other significant particulars, Mr. Nolan directly contradicted Mr. Danko.

he travelled frequently with Mr. Nolan; that they never brought morphine into the United States together; that on one trip to India with Mr. Nolan and Mr. Danko, only Mr. Danko brought morphine back to the United States and that neither Mr. Nolan nor Mr. Flora knew Mr. Danko had the morphine until they were all in the United States; and, that Mr. Flora had aided Mr. Nolan in obtaining a false passport in New York. Court appointed counsel for Mr. Flora was able to represent to this Court that after having conferred with Mr. Flora, that Mr. Flora could testify in accordance with the offer of proof if called to testify but that absent general use immunity he would decline to testify.

To the extent that a district court has the inherent power to grant judicial use immunity the teaching of both *Smith, supra* and *Herman, supra*, caution the district courts to make use of the power only with great reluctance. Sensitive to that understanding, this Court did not believe that Mr. Flora needed a broad grant of judicial immunity—that is a grant of use immunity for every statement made by Mr. Flora— but rather understood that any grant of immunity should, in addition to being limited to testimony essential to the defendant, be restricted to testimony which would tend to incriminate the witness and which could otherwise be used against the witness in a subsequent prosecution. Because much of Mr. Flora's proposed testimony involved no illegal activity,[4] or activity which if illegal would not be illegal in the United States,[5] and because Mr. Flora, having pled guilty to one count of conspiracy to import morphine, had protection from further prosecu-

tion under the double jeopardy clause, the Court, sensitive to the sparing use which should be made of the power to grant judicial immunity, declined to grant general use immunity and instead considered a more limited grant of immunity.

In considering a more limited immunity the Court needed to examine whether any of the proposed testimony was essential and clearly exculpatory as required by *Smith, supra* and *Herman, supra*. With respect to all but two areas of inquiry—assisting Mr. Nolan in obtaining a false passport in New York and the potential illicit sale of hashish to obtain $2000 to repay the loan to Mr. Nolan—the Court was satisfied that Mr. Flora had no testimony to offer which would tend to incriminate him and which could be used against him in further prosecution and which would be of sufficient value to Mr. Nolan to warrant the grant of judicial immunity. With respect to the two areas mentioned above, the Court granted Mr. Flora use immunity.[6]

Despite the limited immunity granted to Mr. Flora, he still declined to testify. The Court instructed him that he should answer. He indicated he would risk contempt unless granted total use immunity. The Court having declined to grant such immunity issued a rule to show cause why he should not be held in contempt. Since it appeared Mr. Flora would decline to testify, the Court instructed the defendant not to call Mr. Flora. Because the Court understood Mr. Flora to be firm in his refusal to testify and given the Court's limited ability to coerce a person only recently sentenced to serve a twelve year jail term, the defendant's request for a continuance was properly denied.

---

4. For example, Mr. Flora's proposed testimony that he and Mr. Nolan did not bring morphine into the United States while travelling with Mr. Danko, of itself suggests no illegal activity by Mr. Flora or Mr. Nolan.

5. While it may have been illegal to smuggle hashish into Switzerland under Swiss law, this Court is unaware of any criminal charges that could be brought against Mr. Flora in the United States for that act.

6. In granting even this limited immunity, the Court was aware of the strenuous objection

posed by the government but believed that under all the circumstances, the limited grant of immunity was the best possible solution. The Court is sensitive to the difficulty this may have created for government counsel in impeaching Mr. Flora by asking about other illegal acts not subject to the limited immunity. However since the government has the power to obtain use immunity, the government could have cured any obstacles created for it in impeaching Mr. Flora if Mr. Flora invoked the Fifth Amendment.

■ While the above situation was the one presented to the Court at trial, the motions currently before the Court are posttrial motions for judgment of acquittal or for a new trial. As such the Court notes that, while to a large degree, the determination of Mr. Nolan's guilt or innocence rested on an evaluation of his credibility, there was no showing that only Mr. Flora could have provided any corroboration. The testimony of Ms. Caplan and Mr. Porter was essentially corroborative. Moreover, having obtained a government agreement not to prosecute either of Mr. Nolan's parents for aiding and abetting a fugitive, the defendant found no use for their testimony. All in all, the Court does not believe that in handling the request for immunity for James Flora, any error was committed which denied the defendant access to essential and exculpatory testimony.

■ As previously noted, it is unnecessary to address many of the particular allegations of error raised by the defendant. However, the Court agrees that the allegation denominated 9(L) in the supplemental motion is factually accurate. This Court did prohibit examination of the good faith of government agents at the suppression hearing. After subsequent research the Court determined that the good faith of the officers was a legitimate basis for denying the motion to suppress. It appears that the defendant may not have had a complete opportunity to develop any lack of good faith in the officers and finds that some relief is appropriate. However the Court is not persuaded at this time that a new trial or judgment of acquittal would be appropriate, instead the Court will permit the defendant to reopen the suppression hearing and explore the good faith of the officers.[7]

Finally this Court is compelled to note that while it has considered all the contentions of error advanced, and has commented on all those deserving further development,

even if there were some error in the trial of this case, the overwhelming proof of defendant's guilt would, in an analysis of the entire case, render such an error harmless.

An appropriate order will issue.

### ORDER

AND NOW, April 8, 1982, upon consideration of the motion for judgment of acquittal and for a new trial, and in accordance with the foregoing opinion, IT IS HEREBY ORDERED that in light of allegations of error 9(L) in the supplemental motion, the defendant shall be permitted to reopen the suppression hearing so that he may have a full opportunity to develop facts which may establish a lack of good faith by the officers and to that extent only.

IT IS FURTHER ORDERED that all other allegations of error are found without merit and the motions for judgment of acquittal and for a new trial are denied.

IT IS ALSO ORDERED that the date for the reopening of the suppression hearing and sentence of the defendant shall be set by further order of court.

---

7. While the denial of the motion to suppress was based on both (1) a lack of any violation of the defendant's rights and (2) alternatively the good faith of the officers in acting as they did, the relief afforded is not meaningless. In the event the defendant can develop facts which establish a lack of good faith then the Court may need to restrict its ruling on the motion to suppress to only the lawfulness of the search and seizure; a restriction which may ultimately be of use to the defendant.