Filed 7/28/21  P. v. Wong CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C081332 |
| Plaintiff and Respondent, | (Super. Ct. No. 14F06639) |
| v. | |
| TJIAK WIE WONG, | |
| Defendant and Appellant. | |

The issues in this unusual case arise from the theft of a wrist watch at a flea market (a "grab and flee") and the efforts of two employees to apprehend the thief—efforts that led to an automobile chase through neighborhood streets, culminating in a crash into the living room of a home and the subjugation by force and pepper spray of the thief and the driver of the car in which the thief was a passenger.

The pursuit and its aftermath, not the theft, became the basis for the criminal charges herein.  The theft was considered less blameworthy than defendant Tjiak Wie Wong's pursuit, during which he allegedly rammed the pursued car twice with his truck

1

causing it to crash into the house exposing the occupants to death or serious injury, and the assault of the thief and driver that followed.

Defendant was charged with violations of Penal Code section 245, subdivision (a)(1), assault with a deadly weapon (counts one through four); Penal Code section 236, false imprisonment (count five); and Penal Code section 22810, the unlawful purchase, possession and use of a tear gas weapon, having previously been convicted of felonies (count six).

It was also alleged that in the commission of his assaults with a deadly weapon, defendant personally inflicted great bodily injury upon the victim, within the meaning of Penal Code section 12022.7, subdivision (a), and that defendant had two previous serious felony convictions.

Defendant was convicted by a jury of false imprisonment, being a convicted felon in possession of tear gas, and four counts of assault with a deadly weapon, to wit, a motor vehicle. In a bifurcated proceeding, the court found two strike priors to be true. Prosecutorial immunity was granted the thief. On appeal, defendant contends the trial court committed prejudicial error in refusing to also grant judicial immunity or compel use immunity to the employee who accompanied defendant, and whose testimony defendant sought to obtain but could not because the employee invoked his privilege against self-incrimination. He also complains of the trial court's refusal to give a defense-requested pinpoint accident instruction. We affirm.

**STATEMENT OF FACTS**

In summary, the following testimony was presented at trial:

On the morning of September 21, 2014, 18-year-old Junior V. picked up his cousin, 19-year-old Christopher V., in his grandfather's Chevy Lumina sedan. Christopher suggested they go to SD Mart, an indoor flea market, and Junior agreed. They shopped at the mart for about 20 minutes but neither made a purchase. Christopher

2

wanted to leave. As they walked back to the car, he told Junior that he had changed his mind and wanted to buy something. Christopher suggested that Junior bring the car close to the side entrance so he wouldn't have to walk all the way back to where it was parked. Junior got the car and parked it at the side entrance where Christopher had suggested they meet. Junior turned the ignition off and was "looking at stuff" on his phone when Christopher ran out of the mart, yelling, "Go, go, go," as he jumped in the car. Junior saw two men chasing and yelling at Christopher but could not hear what they said. Junior drove off as fast as he could.

The two men in pursuit, later identified as defendant and Ki Kim, got into a blue truck and followed Junior's car at a distance of 10 to 15 yards. Junior was going "maybe 45 miles" per hour on Mack Road. As they approached the next light he braked gradually to 25 to 30 miles per hour to make a right turn. After he completed the turn onto Center Parkway, and while going about 40 miles per hour he heard a loud bang and felt a "pretty violent crash" to his rear bumper. According to Junior, "I, obviously I heard it. There was a loud bang. Both me and my cousin jerked forward. Our heads kind of like whip-lashed. And basically I knew we were hit. I didn't know what the damage was. I couldn't really tell because I['ve] never been in that situation before." Junior later pointed to damage on the vehicle from the hit on a photograph.

Junior kept going with the truck right behind them and took the first turn into a residential neighborhood. Going about 30 to 40 miles per hour, Junior braked to slow down in order to safely turn left at a corner. Before making the turn, he looked to find the blue truck, which was not as close as it had been. He thought there was enough distance to safely brake left onto the residential street. He then felt the truck crash into the back of his car.

According to Junior, "this time it was a bigger crash. I felt the truck going straight into the back of the car. And at that point we hadn't completed the turn. So basically we were facing the house that was on that, you know, corner street. We were facing that

3

house. And I broke as soon as the car hit. I broke but it wasn't enough." He was headed initially toward a big tree but then he "swerved the wheel to the right and then that was the house." His foot was on the brake the whole time. The car stopped inside the living room of the house. He had "sort of a sick feeling," like he felt when he had a concussion before.

Junior got out of the car, heard yelling, and saw Christopher pinned down by defendant who had driven the truck, and being kicked by Kim.[1] Junior had not seen the beginning of the altercation since Christopher had exited the car before Junior. Defendant pinned Christopher down with his knees on Christopher's head and tried to handcuff him while Christopher was yelling to get off. Christopher was handcuffed from behind. Defendant then told Junior to sit down and Junior complied. Junior saw mace on Christopher's clothing.

Junior identified a gold watch worth $500 and a mace spray can he had seen at the accident scene. After he was interviewed by the police, he went to the home of his grandparents who took him to the hospital where he was treated and released. At the time of trial, he complained of neck pain. After the accident, Junior kept his distance from Christopher because Christopher had stolen the watch that led to the collision.

Christopher testified he remembered that he stole a watch from a store but claimed he did not remember the collision into the house. He denied having discussed his intent to steal with Junior. After Christopher took the watch, he ran to Junior's car and denied seeing anyone chasing him. When he reached the car, Junior drove away. He denied seeing anyone pursuing them. He did not recall being hit by another car and never felt any other car striking them. He recalled that they crashed into a house, he hit his head on the dashboard, and he blacked out. He denied remembering anything else. He did not

---

[1] Junior admitted that an earlier statement he gave to officers prior to trial that he had also seen the men punch Christopher 10 times was not true.

4

recall speaking to an officer. Christopher admitted that he and Junior went to SD Mart and he had Junior wait in the car while he bought a shirt. He denied telling an officer that he took a watch and ran out of a store. He admitted that when he jumped into the car, he told Junior to "go" but denied anyone was chasing him. He denied having told an officer that the truck hit the car or that he said, "My cousin lost control, and we hit the house."

Christopher remembered being "burned" from pepper spray but did not recall how it occurred. He denied telling an officer that two men punched him five to 10 times in the face, maced him, and handcuffed him. Christopher claimed he was under the influence at the time. He admitted that he had obtained immunity from prosecution for stealing the watch.

Larry Farley was standing outside when he heard the sound of tires screeching. He saw a car traveling toward him with a truck following very closely. The car turned and went into a house on the corner. Farley was not sure whether the truck hit the car. Reviewing his statement to the police wherein he stated that the truck hit the car and sent it out of control into the house, Farley stated that he never saw the car actually complete its turn before going into the house, instead, it was during the turn. Farley did not recall whether the car slowed down when it made its turn. Farley recalled telling the officer that the car was traveling at 50 to 60 miles per hour with the truck following it. Farley did not know whether the car accelerated into the house or was pushed into the house by the truck. There were speed bumps on the road from which the car was turning.

After the car drove into the house, Farley saw the truck pull up behind the car in seconds, and defendant got out. Defendant began struggling with someone (Christopher) who Farley believed was being held down. Farley thought there was a third person but was unclear as to what he was doing. Farley did not hear what was being said. Farley did not see anyone hit, punch, or kick Christopher.

Roger Zanzi was inside his house when the car drove through the exterior wall. He was temporarily trapped but not hurt. Zanzi saw someone run from the car across the

5

yard—a 19-year-old Hispanic man—and someone else—an Asian man in his 20's to 30's—chasing him, grabbing him, and then a struggle with the Hispanic man trying to fight to get away. One man pulled the other man to the ground and handcuffed him. Zanzi never saw mace being used.

## DISCUSSION

### I

### *Prosecutorial Immunity*

All four of the players in this drama were potential criminal defendants: Junior and Christopher for the theft of the watch, Kim and defendant for the assaults arising from the pursuit, and defendant also for possession of the pepper spray. The People chose to forego prosecution of the theft and offered immunity to Junior and Christopher to facilitate their testimony on the People's behalf. Given the prosecution's focus, no immunity was offered defendant, the principal in those offenses, nor was it offered to Kim. The prosecution explained that while Kim made statements that would have been helpful to the prosecution, they were not willing to offer immunity "based on his participation in everything that followed the robbery." He was "essentially an aider and abettor in the entire incident."

Defendant sought to call Kim as a witness and moved that Kim's testimony be given under a grant of judicial immunity. At an Evidence Code section 402 hearing defense counsel presented two statements given by Kim to law enforcement. The court summarized the two statements on the record as follows.

In the initial statement Kim indicated that he worked for a cousin at a store called Gold USA and that Christopher came in wanting to look at a watch. Kim took the watch out of the display case and handed it to Christopher. Christopher ran out of the store. Kim gave chase, joined by defendant who was in the parking lot. Christopher jumped into a gold car with its engine running. Kim and defendant got in the defendant's truck

6

and pursued. Defendant struck Junior's vehicle twice. Ultimately, as the vehicle was making a left-hand turn and slowing down, the truck struck the back of the car and the car went into the house. He did not remember defendant braking or hearing any brakes screeching. After the crash, Christopher came out and there was a fight, started by Christopher. Then defendant sprayed Christopher with pepper spray and put handcuffs on him. Defendant took the watch.

In a subsequent statement, made three and one-half months later Kim said that "Mr. Wong," presumably the defendant, was the manager at SD Mart. A robber stole a watch from a store and an employee at Gold USA ran after the thief. Kim ran out to the parking lot as defendant was coming out of the Dollar Store. There was a driver in the car waiting for the robber. Defendant told Kim to get in the car and asked Kim "What's going on?" Kim told him the watch had been stolen. Kim's statement mentions calling 911 and at that moment the "accident happened." Defendant hit the rear of the car being pursued. Kim hung up from the 911 call. The car continued and was making a left-hand turn, slowed down abruptly, and defendant struck the back of the car once and the car went into the house. Kim and defendant got out. The robber came close with the watch. Defendant took the watch. The robber grabbed Kim's hair and the two fell to the ground together. Defendant gave Kim handcuffs to use on Christopher. Kim didn't know how so ultimately defendant handcuffed Christopher.

Defendant's counsel submitted a written motion and argued orally. He complained that the police investigation was incomplete, taking a statement from a non-English-speaking person. He complained "there wasn't the level of detail that would have been assumed" and there were "issues even with interpretation." He thought that "Mr. Kim has a lot of exculpatory and granted maybe even inculpatory." The "most problematic piece of information that [he would] like the jury to hear" was that the car actually slowed abruptly. He also mentioned Kim's hair being pulled and mutual combat. He complained about the immunity given to prosecution witnesses but "no

7

immunity given to someone who has no criminal background and is a student at UC Davis, an economics major."

The People took the position that Kim was essentially "an aider and abettor in the entire incident"; he essentially aided in the assault while defendant held the victim down. Statements in his original statement incriminated defendant, indicating he made no effort to brake. "[W]e are not willing to give him immunity based on his participation in everything that followed the robbery."

Defendant's argument on appeal essentially mirrors his argument before the trial court. Noting that the prosecutor granted immunity to Christopher, the admitted robber, but refused to grant immunity to Kim, defendant discounts Kim's initial statement in which he stated defendant struck Junior's car twice and he did not recall defendant braking before hitting the car, because it was taken without the aid of a translator, but credits the second statement given with the assistance of a translator to correct facts misstated in the first statement. In the second statement he indicated the car "was slowing down abruptly to make a left-hand turn" when hit by defendant's truck. The second statement also mentions that Kim called 911 at the moment the truck hit the car a second time and mentioned that Christopher grabbed Kim's hair when the two were out of their respective vehicles.

Defendant acknowledges the absence of clear authority in California for the grant of immunity by a trial court, but cites cases in which the Supreme Court recognized that "a judicially conferred use immunity might possibly be necessary to vindicate a criminal defendant's rights to compulsory process and a fair trial." (*People v. Hunter* (1989) 49 Cal.3d 957, 974.) Subsequent to trial in this matter, our Supreme Court decided *People v. Masters* (2016) 62 Cal.4th 1019 (*Masters*), holding that California courts have no authority to confer use immunity on witnesses. The court noted that " 'the power to confer immunity is granted by statute to the executive' " and " 'prosecutors are not under a general obligation to provide immunity to witnesses in order to assist a defendant,' "

8

but in appropriate circumstances due process may compel a defense witness to be immunized by the prosecution. (*Id*. at pp. 1051-1052.) The appropriate circumstances require a finding of prosecutorial misconduct—" 'intemperate behavior [that] is sufficiently egregious that it infects the trial with such a degree of unfairness as to render the subsequent conviction a denial of [federal] due process.' " (*Id*. at p. 1052.)

Without adopting them as California standards, the Supreme Court set forth the factors articulated in two federal cases, *Government of Virgin Islands v. Smith* (3d Cir. 1980) 615 F.2d 964, 972 and *U.S. v. Quinn* (3d Cir. 2013) 728 F.3d 243, 251-257, to evaluate claims of prosecutorial misconduct: " '[Witness immunity was] properly sought in the district court; [2] the defense witness [is] available to testify; [3] the proffered testimony [is] clearly exculpatory; [4] the testimony [is] essential; and [5] there [are] no strong governmental interests which countervail against a grant of immunity.' " (*Quinn, supra*, at p. 251, quoting *Smith, supra*, at p. 972.)

Referring to California rules on prosecutorial misconduct, the court pointed out "Prosecutorial misconduct that falls short of rendering the trial fundamentally unfair may still constitute misconduct under state law if it involves the use of deceptive or reprehensible methods to persuade the trial court or the jury." (*Masters, supra*, 62 Cal.4th at p. 1052.) Under the facts before it, the court concluded it could not characterize the prosecutor's refusal to grant immunity as "egregious, unfair, deceptive, or reprehensible" and thus the refusal was not misconduct. (*Id*. at p. 1053.)

Like the Supreme Court, we cannot find defendant's request for Kim's immunity is compelled by either federal decisions or by California rules on prosecutorial misconduct. It is not the rule that immunity must be granted whenever a potential witness can offer relevant and helpful testimony to a defendant. Under federal authorities, the testimony must be "essential" and under California authorities the refusal to offer immunity must be "egregious, unfair, deceptive, or reprehensible."

9

In support of his motion, defendant's counsel insisted that Kim "was literally a living video camera sitting next to [defendant]." Not so. Kim was no video recorder but a human relating his perception and memory of the events that unfolded. Humans cannot read minds or record intent. His testimony was far from unassailable. His initial account of the events was consistent with that of Junior, the principal prosecution witness who testified defendant rammed his vehicle into Junior's car, and while Kim could claim that his initial account was a misunderstanding, that claim was itself a matter of dispute. In any event, his was not the only account. There were other witnesses who offered their perceptions of what happened and some of those perceptions assisted defendant. Indeed, the testimony of Christopher, the alleged thief, was equivocal. Kim's testimony might have also been helpful to defendant's cause but, with or without Kim's testimony, the testimony of other witnesses established defendant's guilt. And there was nothing unfair or reprehensible about a prosecutor's refusal to accord immunity to a person who arguably aided and abetted the same offenses as the defendant. The prosecution is not required to forego prosecution of a person whose testimony, if believed, might assist an accomplice, particularly where other witnesses were available and testified to the facts at issue.

We thus agree with the trial court and reject defendant's claim.

II

*Instructional Error*

Near the end of trial testimony, and during a discussion about possible jury instructions, defendant's counsel indicated that he believed an instruction on accident would be appropriate. The court expressed the view that "as far as the accident, there is no evidence yet, not that I have heard of yet," and following the testimony of two additional witnesses unrelated to that issue, the court later denied the request. Counsel presented no argument in support of the request for an accident instruction, but in closing argument urged, without objection, that defendant was not guilty because any contact

10

between the two vehicles was accidental. He asserted that defendant had multiple opportunities to ram Junior's car at stop signs along the way but did not, so the contact at the end of the chase must have been accidental. Counsel also questioned whether the jury could "know beyond a reasonable doubt that [defendant] was driving. And then even if he was, did he willfully aim his car at [Junior's] car?"

On appeal, defendant argues the court erred in refusing to give CALCRIM No. 3404, as follows:

"The defendant is not guilty of <insert crime[s]> if (he/she) acted [or failed to act] without the intent required for that crime, but acted instead accidentally. You may not find the defendant guilty of <insert crime[s]> unless you are convinced beyond a reasonable doubt that (he/she) acted with the required intent."

Defendant cites to the principle that "When a legally correct instruction is requested, however, it should be given 'if it is supported by substantial evidence, that is, evidence sufficient to deserve jury consideration.' " (*People v. Wilkins* (2013) 56 Cal.4th 333, 347, citing *People v. Marshall* (1997) 15 Cal.4th 1, 39.) In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence, but only whether there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt. (*People v. Ramirez* (1990) 50 Cal.3d 1158, 1180.)

The People insist there was not substantial evidence to support the instruction. Clearly, defendant struck Junior's vehicle twice with substantial force. There was no evidence that defendant forwent earlier opportunities to ram the car—no evidence of stop signs that would have provided such opportunities. Moreover, according to the People, given the speed at which the vehicles were traveling and the closeness of defendant's pursuit, it could not be claimed that any collision was an accident. Rather, it was an event almost certain to happen.

11

We are also persuaded by the People's argument that any error was harmless. Error in refusing to give a pinpoint instruction requires reversal "only if 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*People v. Wilkins, supra*, 56 Cal.4th at p. 349.) Defendant was permitted to argue that collision with Junior's vehicle was not intentional but an accident. His argument failed not for lack of a pinpoint instruction but because the evidence established a deliberate effort to run Junior off the road. Defendant succeeded in that effort at a point in the pursuit where the vehicle was placed on a trajectory that sent it off the road, missing a tree but ending in a house, all at great risk to the occupants of the vehicle and the house.

## DISPOSITION

The judgment is affirmed.

_____/s/_____
RAYE, P. J.

We concur:

_____/s/_____
HULL, J.

_____/s/_____
RENNER, J.

12