UNITED STATES of America,

v.

Rodney T. MACK, a/k/a CUD Rodney
Mack, Appellant.

United States of America,

v.

Hassan Hawkins, a/k/a Hassan
Mack, a/k/a Hass Hassan
Hawkins, Appellant.

United States of America,

v.

Jesse Opher, a/k/a Oppie, a/k/a
O Jesse Opher, Appellant.

United States of America,

v.

Ronald L. Mack, a/k/a Ronnie Ronald
L. Mack, Appellant.

United States of America,

v.

Maurice W. Riley, Maurice
Riley, Appellant.

Nos. 02–2203, 02–2221, 02–2222,
02–2223, 02–2224.

United States Court of Appeals,
Third Circuit.

Argued Sept. 3, 2003 as to Nos. 02–2203,
02–2221, 02–2222 and 02–2223.

Submitted Under Third Circuit
LAR 34.1(a) Sept. 3, 2003
as to No. 02–2224.

Filed Sept. 18, 2003.

Decided Sept. 19, 2003.

David A. Ruhnke (Argued), Ruhnke & Barrett, Montclair, New Jersey, for Appellant Rodney T. Mack.

Maria Delgaizo Noto (Argued), Matawan, New Jersey, for Appellant Hassan Hawkins.

Michael N. Pedicini (Argued), Morristown, New Jersey, for Appellant Jessie Opher.

Timothy J. McInnis (Argued), New York, New York, for Appellant Ronald L. Mack.

Maurice Riley, Jr., Appellant pro se.

Christopher J. Christie, United States Attorney, George S. Leone Chief, Appeals Division, Gail R. Zweig (Argued), Assistant United States Attorney on the Brief, Sabrina G. Comizzoli, Assistant United States Attorney on the Brief, Newark, New Jersey, for Appellee.

Before SLOVITER, NYGAARD and ROTH, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Before us are the consolidated appeals of five appellants who were convicted after a three month trial of conspiracy to distribute cocaine and crack cocaine. Rodney Mack, Ronald Mack and Jesse Opher were sentenced to life imprisonment, Hassan Hawkins to 360 months imprisonment and Maurice Riley to 210 months imprisonment. They raise a great many issues in their respective appeals, some of which are discussed by more than one appellant. Other appellants make a general joinder in issues raised by others. After review of the briefs and consideration of the oral arguments made on behalf of the four counseled appellants,[1] we will affirm all of the judgments of conviction and sentence. Because the facts and issues are well known to the parties and we see no issue that is novel, we need not write a precedential opinion or provide a detailed recitation of the facts and all of the legal claims.

This court exercises jurisdiction over appeals of convictions pursuant to 28 U.S.C. § 1291. This Court exercises jurisdiction over appeals of sentences pursuant to 18 U.S.C. § 3742(a).

## I.

### FACTS IN BRIEF

The Government charged that the conspiracy, which it has labeled as the "Mack Organization," included, in addition to the five appellants, other individuals who served auxiliary, but critical, roles as couriers, drivers, and street sellers. They included Yusef Allen, Ben McNeil, George Hardison, Selina Harris, Lateef Taylor, Salaam O'Neal, Sebastian Perry, Eric Mack, and Gary Smith.

All of the above (with the exception of Yusef Allen) were also charged in federal court with various drug crimes, pled guilty, have been sentenced and have not appealed. Many testified at the trial. Yusef Allen was prosecuted and convicted in state court for murder, and the federal charges were not pressed. Following

---

1. Maurice Riley appealed *pro se*.

presentation of testimony by cooperating witnesses and undercover officers, as well as the introduction of evidence consisting of audio and videotapes, telephone records, credit card bills, wire transfer receipts, and confiscated drugs, firearms, and related paraphernalia, the jury found that the members of the Mack Organization were responsible for agreeing to, and in fact distributing, in excess of five kilograms of cocaine and 50 grams of crack cocaine (cocaine base) from 1994 to 1999.

The Mack Organization was headquartered in Plainfield, New Jersey. Rodney Mack was the leader of the Plainfield operation. According to the Government, the organization also maintained operations in North Carolina under the direction of Ronald Mack. We will discuss the principal issues raised and reference the others.

## II.

### CONTENTIONS OF THE APPELLANTS

#### A. *The Scope of the Conspiracy*

■ One or more of the appellants argues that the Government mischaracterized the operations as a drug distribution business operating under a single umbrella whereas, in fact, the evidence showed a series of unconnected drug sales and multiple conspiracies that were at variance with the Government's allegation of a single conspiracy. This is essentially a factual issue which the jury decided adversely to the defendants.

The elements of conspiracy are: "(1) a shared 'unity of purpose,' (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal." *United States v. Perez,* 280 F.3d 318, 342 (3d Cir.2002) (internal citation omitted). The Government may meet its burden with circumstantial evidence, so long as a reasonable jury could find that each element

was proved beyond a reasonable doubt. *Id.* This Court does not require the Government to prove that each alleged coconspirator knew all of the conspiracy's details, goals or other participants. *Id.* at 343.

To the extent that defendants contend there was insufficient evidence of a single conspiracy, we accord the jury's verdict high deference. We must view the evidence in the light most favorable to the verdict. After reviewing the substantial record we conclude that the Government met its evidentiary burden to sustain the guilty verdict and hold that there was sufficient evidence from which the jury could have rejected the claim of those defendants, in particular Ronald Mack and Maurice Riley, that there was insufficient evidence to support the ultimate finding by the jury of their involvement in the Mack Organization.

■ Those appellants also argue that while the indictment charged a single conspiracy, the evidence at trial actually showed multiple conspiracies (from the satellite operations in North Carolina and Texas), and therefore a variance existed and precluded their guilt in the single conspiracy. It is their burden to demonstrate not only that a variance between the charge and the proofs existed, but also that they were affirmatively prejudiced by the variance. *United States v. Quintero,* 38 F.3d 1317, 1337 (3d Cir.1994). They have not met their burden, and therefore we reject this claim.

#### B. *Admission of Evidence of Lannie Silver's Murder*

■ All or most of the appellants vigorously challenge the District Court's ruling admitting the evidence that a member of the conspiracy, Yusef Allen, murdered Lannie Silver in the course of an incom-

pleted drug transaction. Rodney Mack's statement of the claim is typical of the position of the other appellants. He contends: "The District Court erred by allowing proof of an impulsive murder that was not charged in the indictment, not shown to have furthered the conspiracy, or alleged to have been committed with the prior knowledge or participation of any of the five defendants on trial." Br. of Rodney Mack at 5.

There was evidence from which the jury could have found that the murder victim, Silver, a light-skinned black man, was new to the area, had tried to buy drugs in a manner that violated the rules under which the conspiracy operated, in that sales were made only to black buyers (because of concern that white buyers were police agents), and asked a prohibited general question, such as "what you got" whereas the rules required buyers to place a specific order in terms of drug and quantity. In arguing at trial for preclusion of evidence of the homicide, defendants contended that Allen's act was impulsive and that he was acting on his own volition rather than as directed by the conspiracy. They argued that the evidence of the murder was of minimal probative value at best and prejudicial and was used to show they were nothing more than a murderous gang.

The District Court rejected the claim that the evidence of Lannie Silver's murder was irrelevant, holding that it did go to proving the nature of the conspiracy. It ruled as follows:

> The evidence, as it's been described to me, does go to proving the nature of the conspiracy; one of violence and dangerousness. The membership in the conspiracy involving McNeil and later Ronald Mack, as I understand Selina Harris testimony. And the existence of the conspiracy, and I move back to the theo-

ry that I hear the government opposing, which is the this homicide was unwittingly, but factually provoked by the behavior of Lannie Silver, which explains the response of Yusef Allen, a coconspirator, such as to further the goal of the conspiracy. Demonstrate the duration—the long duration of the conspiracy. And the fact that this is not a random group of people randomly selling. But a conspiracy to distribute drugs which had its own inherent characteristics of a substantial nature, that these drug activities had been ongoing for some time. The ability to carry forth this kind of activity, has already been made in the matter of proofs with respect to both evidence of drug activity and drug sales and violence with respect to ammunition and guns being on the premises.

> I find that the proof does go to the demonstration of a common goal. The intention of a specific outcome that is common to the conspiracy, the conspirators, and that their actions further that goal, and therefore I find that it is admissible.

App. at 1405–06.

We review the District Court's decision to admit evidence for abuse of discretion. We agree that the evidence was relevant to show that the members of the Organization kept weapons at their disposal in the event that the rules were not followed, and the identities of various conspirators, including Ben McNeil (seller), Yusef Allen (manager and seller), Jesse Opher (tried to clean up the murder site to resume normal drug sales), and Rodney and Ronald Mack (who arranged Allen's extradition from his hiding place at Ronald Mack's in North Carolina back to Plainfield to turn him in).

The evidence also showed the interdependence between the North Carolina operations and the Plainfield headquarters.

Furthermore, the District Court gave a limiting instruction with respect to the evidence of the Silver murder which carefully advised the jury how it could use the evidence.[2]

Appellants argue that the District Court's ruling was contradictory to its subsequent holding at sentencing where it declined to add the homicide enhancement, stating that "Yusef Allen's conduct was Yusef Allen's conduct," and declining to find that his conduct "was of necessity foreseeable" or that "he furthered the goals of the conspiracy." App. at 6829–31. We find nothing inconsistent with these rulings. Although the evidence was relevant for purposes of directly proving the conspiracy, it did not show the type of adoption by the other conspirators that would warrant using it to enhance defendants' sentences. We therefore reject the claims directed to the admission of the homicide evidence.

## C. *Denial of Judicial Immunity*

■ Ronald Mack complains of the District Court's denial of judicial immunity to Salaam O'Neal, and relies on this court's opinion in *Government of the Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir.1980). In that case we held that the district court may confer immunity upon a witness using a five-factor analysis: (1) the immunity is properly sought in the District Court; (2) the witness is available to testify; (3) the proffered testimony is clearly exculpatory; (4) the proffered testimony is essential to the defense; and (5) there is no strong governmental interest against the immunity. *Id.* at 972.

Once again, the applicable standard is abuse of discretion. Salaam O'Neal is an admitted member of the Mack Organization, who, following his arrest, offered a substantial amount of inculpatory information to the authorities concerning the drug-related activities of the Organization. Initially, O'Neal was to be a Government witness to inculpate other members of the conspiracy in exchange for a plea agreement. According to the Government, it obtained other corroborated information that cast doubt on O'Neal's proposed testimony, placing his plea agreement in jeopardy and exposing him to additional criminal charges. Fearing further prosecution, O'Neal invoked his Fifth Amendment privileges and refused to testify.

In response to Mack's reliance on *Smith*, the Government cites our opinion in *United States v. Ammar*, 714 F.2d 238 (3d Cir.1983), where we held that judicial immunity was properly denied because the exculpatory nature of the proffered testimony was "at best speculative, its necessity [was] questionable, and in view of [the witness's] central role in the conspiracy, the government's interest in not having him granted immunity [was] considerable." *Id.* at 251 n. 8. The Government also argues here that O'Neal's testimony could not be considered to be "clearly exculpatory" inasmuch as he had lied about other "significant" information. The District Court questioned whether the proffered testimony would have been "essential" to

---

2. The limiting instruction was as follows:

   You have also heard testimony and seen evidence concerning certain acts which may be criminal but which have not been charged in the indictment. These include the homicide of Lannie Silver and the possession of firearms. None of the defendants is charged in the indictment with any of these offenses. The United States is per-mitted to introduce such evidence for a limited purpose of attempting to show the existence of the charged conspiracy, the nature of the conspiracy, and the membership in that conspiracy and for no other purpose. You may not consider this evidence for any other purpose

   App. at 7621.

Ronald Mack's defense when the jury would have been required to make a determination on O'Neal's credibility. Additionally, the District Court found that since the Government had a potential interest in prosecuting O'Neal (after the Government decided that it could not use him as a potential witness), it had a strong governmental interest against immunity.

After consideration of the arguments, and our additional precedent, *see e.g.*, *United States v. Steele*, 685 F.2d 793, 808 (3d Cir.1982), we conclude that the District Court did not abuse its discretion when it denied immunity to O'Neal.

## D. *Miscellaneous Rulings*

The appellants also complain of various additional evidentiary rulings. Ronald Mack argues the District Court ruled improperly in permitting the evidence of his arrest in North Carolina and his alleged drug dealings in that state, in allowing the Government's use of a mug shot of him and similar shots of other defendants, in allowing the jury to see vast amounts of evidence and testimony that proved that cooperating witness Lateef Taylor and George Hardison were engaged in the drug dealing trade but which had no link to the charge conspiracy, and in permitting the Government to obtain and introduce the at trial tax returns and return information without complying with the requirements of Title 26.

Hawkins complains that Ruby Waller should have been precluded from testimony about unspecified acts of violence. Riley complains about a number of evidentiary rulings including, but not limited to, introduction of "uncorroborated evidence"; "inadmissable [sic] hearsay Rule 801 violations"; "admissions of improper evidence"; "illegal documents submitted"; and "suppressed evidence (preserved in 60(b) motion)."

The evidence that the District Court admitted was background to the conspiracy statements made in the course of and in furtherance of the charged conspiracy and evidence of drug dealing that was in furtherance of the charged conspiracy. We have considered all of the evidentiary claims and find no abuse of discretion.

## E. *Claim of Improper Vouching*

■ Rodney Mack argues that the Government impermissibly "vouched" for the Government's witness Ruby Waller by eliciting testimony from Plainfield Detective Francis Wilson that Yusef Allen was tried and convicted of Silver's murder. The Government submits that Wilson's testimony was necessary to show "the sequence of events that led the police (and then the DEA) to focus on the drug dealing at the [West Third Street Properties] at or about that time, and the circumstances surrounding the change in the level of drug activity at the [West Third Street Properties.]" Br. of Government at 68.

We have held that there are two criteria that must be met for the Government's conduct to constitute vouching: (1) the prosecutor must assure the jury that the testimony of a Government witness is credible; and (2) this assurance is based on either the prosecutor's personal knowledge, or other information not contained in the record. *United States v. Walker*, 155 F.3d 180, 187 (3d Cir.1998). We know of no case in which the statement of a witness is deemed to be vouching and we are unwilling to extend the law in that direction. We therefore reject any claim that there was improper vouching in this case.

## F. *Summation Misconduct*

■ Hawkins, Ronald Mack and Riley argue that the Government prosecutor committed summation misconduct which

deprived them of a fair trial. We review for plain error, and we will only reverse if "the prosecutor's remarks, taken in context of the trial as a whole, were sufficiently prejudicial to have deprived [defendants of their] right to a fair trial." *United States v. DiPasquale,* 740 F.2d 1282, 1297 (3d Cir.1984); *see also United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (even if prosecutor's statements were inappropriate and amounted to error, we must review for undermining of fundamental fairness of the trial and contribution to a miscarriage of justice—plain error).

Hawkins and Ronald Mack contend that the prosecutor committed summation misconduct when he made comments directed toward the absence of evidence. Appellants argue these comments were in reference to the fact that Ronald Mack did not take the stand in his defense, and that the only conclusion the jury could make was that the prosecutor intended to shift the burden of proof to the defendants. Combined with the lack of a curative instruction, they submit that they were deprived of a fair trial and were impermissibly prejudiced.

This court, along with the Supreme Court, has held that a prosecutor is free to comment on the weaknesses in the defense's case so long as it does not imply that the evidence should come from defense, *i.e.,* propose a burden shift. *United States v. Robinson,* 485 U.S. 25, 32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988); *United States v. Ashfield,* 735 F.2d 101, 111–12 (3d Cir.1984).

We believe that the comments to which the appellants refer us, the reference to "Perry Mason" and a defense attorney's "sleight of hand," do not constitute summation misconduct. Moreover, those comments may well be considered to be invited responses. In any event, we see no prejudice from the remarks of which appellants complain.

### G. *The* Batson *Challenges*

■ Appellant Hawkins argues that the Government, by its improper use of jury challenges to exclude minority jurors, denied Hawkins his right to a fair trial, a claim adopted by all of the other appellants. In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that it is a violation of due process for the prosecution to challenge potential jurors based solely on their race. The courts' treatment of *Batson* challenges is now established.

The defendant must first make a prima facie showing by "demonstrating a pattern of peremptory challenges of jurors of a particular race." *United States v. Milan,* 304 F.3d 273, 281 (3d Cir.2002). Once the court determines that the prima facie case has been met, the burden shifts to the Government to offer a racially neutral explanation for the strikes. *Id.* The burden then shifts once again, this time back to the defendant to show that the Government's explanation is pretextual. *Id.* The trial court must then weigh the two arguments and decide whether the *Batson* challenge should stand.

The defendants are African–American. During the jury selection process, the Government used eight peremptory challenges: three against Caucasians, three against African–Americans, and 2 against Hispanics. In successive rounds, the Government challenged Mr. Rivera, a Hispanic, Ms. Zlu, an African–American, and Ms. Foster, an African–American. The defendants made all their challenges against Caucasians. After a recess following the events of September 11, the Government challenged Ms. Ward–Whetstone, an African–American, and Ms. Miranda, a Hispanic. The court prompted the Govern-

ment for its race-neutral explanations for its peremptory challenges, skipping over the prima facie showing.

The District Court noted that Ms. Ward–Whetstone had "a bias against her [estranged] husband who was a police officer," and found that it was a permissible, race-neutral explanation. App. at 684. As for Mr. Rivera, a Hispanic, the Government proffered that he was very young, single and into clubbing, and in the prosecutor's opinion, clubbing is rife with narcotic and drug activity. We have stated that it is a "legally legitimate reason" to exclude a potential juror due to "a concern that a personal experience may have left a strong impression on the juror, thus influencing [his] evaluation of the evidence in a way difficult for the prosecutors to predict." *United States v. Uwaezhoke*, 995 F.2d 388, 394 (3d Cir.1993). Similarly, the Government had a legitimate reason to exclude Ms. Foster, an African–American, who has a son who was incarcerated on drug charges.

The Government explained that Ms. Zlu, an African–American, was young, single, and did not have a family, leading to the implication that those who have an established home life have more favorable views against drug-use. While we may question this assumption, we have viewed that peremptory challenges based on age and marital status in the context of narcotics cases are logical and legitimately race-

neutral. *See United States v. Clemons*, 843 F.2d 741, 748 (3d Cir.1988).

Finally, the Government explained that it challenged Ms. Miranda, a Hispanic, because of its concern with her "relative inexperience because of her age in dealing with the issues that are going to come before this jury and in dealing with this case." App. at 717. We agree with the District Court that this explanation was race-neutral on its face.

The trial judge is limited to making a factual finding on whether the explanations were race-neutral on their face, not whether it agreed with them. *United States v. Casper*, 956 F.2d 416, 419 (3d Cir.1992). The District Court believed that the jury panel that was ultimately selected reflected a diverse group of people, including one South–Asian juror, four African–American jurors, and seven Caucasian jurors. We find no clear error. We have considered all of the other contentions raised by the appellants directed to the trial itself, and have concluded that there was no prejudicial error.

Accordingly we will affirm the judgments of conviction.[3]

## III.

### SENTENCING

As noted at the outset, the District Court imposed substantial sentences, and it is therefore not surprising that ap-

---

**3.** Maurice Riley also raises a number of claims in appealing the District Court's denial of his Rule 33 motion. These claims include a failure to comply with *Brady* obligations, failure to be present when questions were asked by the jury, and the evidentiary errors discussed *supra*. After reviewing the record, we conclude that the District Court did not abuse its discretion in denying the motion for a new trial.

Riley also includes headings for, but no arguments on, a speedy trial violation and

ineffective assistance of counsel. Even if a cursory mention in a brief were sufficient to preserve an issue on appeal, we see no basis in the record from which to find a speedy trial violation. Furthermore, ineffective assistance of counsel is most appropriately raised in a 28 U.S.C. § 2255 proceeding and not on direct appeal.

After carefully considering Riley's arguments on appeal and the record, we reject his arguments.

pellants raise objections. Specifically, Hawkins argues that the method in which the Probation Department gathered the facts upon which to base its recommendation as to him was unfair and presented factual findings that were inconsistent with the jury's findings. He contends that because the District Court relied on the Probation Office's erroneous factual findings to determine his sentence, it committed clear error.

Hawkins had the opportunity to submit additional information and persuade the Probation Officer to look favorably upon the facts. However, the Probation Officer believed that the Government's version of the facts more accurately reflected the factual findings of the jury. The factual findings of the Probation Department and its sentencing recommendations were forwarded to all the parties for comment, and Hawkins did use that opportunity to raise objections to which the Probation Officer subsequently responded.

Hawkins argues that the District Court committed clear error by accepting the Probation Office's finding that, as a convicted member of the conspiracy, he was accountable for 50 to 150 kilograms of cocaine, 1.5 to 5 kilograms of crack cocaine (cocaine base), and 1 to 3 kilograms of heroin, which was equivalent to 41,000 to 133,000 kilograms of marijuana. Under those findings, U.S.S.G. § 2D1.1(c) sets the base offense level at 38. Hawkins argues that because the jury, in an interrogatory, found him responsible for five kilograms or more of cocaine and 50 grams or more of crack cocaine (cocaine base), he should have been found responsible for at least five kilograms but less than 15 kilograms of cocaine and at least 50 grams but less than 150 grams of cocaine base, which calls for a base offense level of 32. The Government argues that the jury found

Hawkins guilty of at least five kilograms of cocaine and 50 grams of cocaine base, and because the jury was not asked to find an upper bound, it would have been inappropriate to impose a level 32 rather than the level 38 base.

Consistent with Fed.R.Crim.P. 32, the District Court conducted its own independent factual finding and ultimately agreed with the Probation Officer and imposed a base offense level of 38, based on drug weight, later adjusted to 42 on weapons possession and aggravating role. App. at 6915. We have no basis to overturn the District Court's finding.

■ Hawkins also objects to the two level increase[4] imposed by the court on the basis that he had a managerial role in the conspiracy. See U.S.S.G. § 3B1.1(b). We have held that "[t]o apply section 3B1.1, a district court must find that the defendant exercised control over at least one other person." *United States v. Katora,* 981 F.2d 1398, 1402 (3d Cir.1992). It was established at trial that Hawkins used Harris and Hardison to transport, sell, and procure drugs. Although Hawkins may not have had as great a role in the conspiracy as other members of the Mack Organization, we cannot say that the District Court abused its discretion in imposing a two level sentence enhancement based on the finding that he directed the activities of another conspiracy member.

■ Ronald Mack challenges his sentencing for three reasons, claiming that the District Court erred for imposing sentence enhancements for (1) reckless endangerment during flight; (2) possessing a weapon during the commission of the offense of conviction; (3) occupying a managerial/supervisory role in the conspiracy. We review the findings of fact for clear error, *United States v. Givan,* 320 F.3d

---

4. The trial judge granted a one level downward departure for Hawkins, given that he

was not as involved as Ronald Mack. App. at 6915.

452, 463 (3d Cir.2003), and application of the Sentencing Guidelines for abuse of discretion, *Buford v. United States,* 532 U.S. 59, 64, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001).

U.S.S.G. § 3C1.2 provides that "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, [impose a sentence enhancement of] 2 levels." On August 8, 1997, Ronald Mack drove his car directly at a police officer and then led the authorities on a high speed chase on the freeway, undoubtedly endangering the lives of the police officers and other motorists.

Ronald Mack argues that the 2 level enhancement was an abuse of discretion because there is no "nexus" between his 1997 arrest and current conspiracy, which he submits stems from his 2000 arrest in Plainfield, NJ, involving federal DEA agents. The Government responds that the District Court found that the August 8, 1997 drug transaction that resulted in the threat of injury to a police officer occurred during the course of and in furtherance of the conspiracy. We cannot characterize that factual finding, which provides the relevant nexus, as clearly erroneous.

■ We also review for clear error the District Court's finding that Ronald Mack had a managerial role in the conspiracy. U.S.S.G. § 3B1.1(b). Ronald Mack's argument here is much like the other parts of his argument, as he contends in some detail how his transactions in North Carolina were unrelated to the Mack Organization and that there was no evidence to link him to drug-related activity while he was in Plainfield, NJ. The findings of the trial court to the contrary were not clearly erroneous. Again, a defendant must have directed or controlled the actions of at least one other individual to qualify as a manager. *Katora,* 981 F.2d at 1402. The

Government established Ronald Mack's extensive participation in the Mack Organization; he funded drug purchases, resupplied street sellers, served as a lookout, and ran the North Carolina operations, in the course of which he directed George Hardison and Selina Harris to transport drugs to and from the West Third Street Properties in New Jersey. This evidence sufficed to justify the three level sentence enhancement.

■ Finally, Ronald Mack challenges the two level sentence enhancement applied for firearms possession because he alleges that "[b]ecause of his physical distance from the conspiracy's hub of activities and his lack of involvement in its operations, one cannot say that the possession of firearms by co-conspirators was foreseeable to him or in furtherance of the conspiracy he agreed to join." Br. of Ronald Mack at 53. U.S.S.G. § 2D1.1(b)(1) imposes a two level sentence enhancement if "a dangerous weapon (including a firearm) was possessed." Also, U.S.S.G. § 1B1.3(a)(1)(B) states that "in the case of a jointly undertaken criminal activity[,] all reasonably foreseeable acts ... that occurred during the commission of the offense of conviction" are considered to be part of relevant conduct.

Ronald Mack contends that he never exercised the direct control that would have made it foreseeable that his coconspirators would possess firearms. However, the District Court and the jury were satisfied that the Government had proven its case as to Ronald Mack's involvement in the Mack Organization. We have previously recognized that firearms are "tools of the trade" in a drug operation, and thus it is foreseeable that a drug conspiracy as large as the Mack Organization would possess firearms. Indeed, the evidence showed that the Mack Organization stockpiled weapons and ammunition at the West Third Street Properties. More firearms

were found in the vehicle that Ronald Mack frequently used to make his drug deals. It is irrelevant that he did not possess firearms at the time of his arrest because the Guidelines impute upon Ronald Mack all foreseeable acts that occurred in furtherance of the conspiracy. It was not clear error to conclude that Ronald Mack's co-conspirators possessed weapons during drug transactions and transportation was reasonably foreseeable.

■ Ronald Mack also argues that the District Court erred in failing to consider his motion for downward departure based on U.S.S.G. § 5K2.0. Having reviewed the criteria established under *Koon v. United States*, 518 U.S. 81, 95, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), for granting a downward departure based on circumstances not considered by the Sentencing Guidelines, we see no basis to overturn the District Court's determination that there was no basis to depart.

■ Ronald Mack finally argues that the imposition of a life sentence constitutes cruel and unusual punishment forbidden by the Eighth Amendment. However, under no standard of review can Ronald Mack show that his sentence was "grossly disproportionate" to his criminal conduct. *See Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (refusing to grant habeas corpus relief where defendant challenged California's three strikes sentencing law that resulted in the imposition of two 25–to–life sentences for two counts of petty theft with a prior conviction for stealing $150 in videotapes).

■ Defendants Opher, Hawkins, Ronald Mack and Maurice Riley[5] challenge their sentences on the basis of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348,

147 L.Ed.2d 435 (2000). However, we have held that *Apprendi* is inapplicable where the ultimate sentence imposed by the District Court did not exceed the prescribed statutory maximum. *United States v. Cepero*, 224 F.3d 256, 267–68 n. 5 (3d Cir.2000) (en banc). None of the sentences complained of exceeded the statutory maximum. These arguments therefore cannot be sustained.

### IV.
### *CONCLUSION*

We have attempted to allude to each of the arguments raised by each of the appellants. To the extent there may have been an argument made that is not specifically discussed, we reject it. For the reasons set forth above, we will affirm the judgments of conviction and sentence as to each of the five appellants.

---

5. As a Supplemental Appendix to his appeal, Maurice Riley attached the verdict sheet and a copy of a DEA Lab Report. However, because the lab report was an analysis of a sample, it bears no relevance to the amount for which Riley was sentenced.